PETER LAWLESS et al., appellants,

*v.*

SARA L. FLEMING, respondent.

[Filed June 23d, 1898.]

1. The power to direct either party to a suit to give to the other an inspection and copy, or permission to take copy, of any books, papers and documents in his possession or under his control, is inherent in a court of equity, and can be exercised in the absence of any statute conferring such right.

2. *Gen. Stat. p. 2559 § 157* does not apply to a court of equity, the act of which it forms a part being entitled "An act to regulate the practice of courts of law."

On appeal from an order advised by Vice-Chancellor Pitney, whose opinion is reported in *Fleming* v. *Lawless, 11 Dick. Ch. Rep. 139*.

*Mr. Halsey M. Barrett,* for the appellants.

*Mr. Washington B. Williams,* for the respondent.

The opinion of the court was delivered by

NIXON, J.

The bill in this cause, in which the appellants are the defendants, was filed to foreclose a mortgage held by the respondent upon property in Jersey City. A final decree was made on the 25th of January, 1897, and a sale of the mortgaged premises ordered. While an appeal to this court was pending, an application, based upon affidavits that a lost receipt had been found, was made by the appellants to have the record in the cause remitted to the court of chancery for such further action by that court as it might deem fit and just without prejudice to either party, and an order was made to that effect.

Lawless v. Fleming.

Upon the return of the record to that court, a motion was made to open the final decree and permit the petitioners to produce and prove the receipt, alleged to have been lost and afterwards found, for the payment of $2,600 which it was claimed should be deducted from the final decree.

The court of chancery, after a full hearing, denied the prayer of the petition, and an appeal from that order is now before us for review.

The single question on this appeal is whether the vice-chancellor erred in denying that application, and any expression of opinion as to the merits of the case upon the whole record will be carefully avoided. The ground of the refusal rested mainly upon the disobedience of an order in the cause made on the 2d day of December, 1895, upon the application of the complainant, that the defendants

"produce receipts, vouchers or other evidences in writing of the payments by them, or any of them, to James Fleming, of the sum of three thousand two hundred and seventy-two dollars and seventy-two cents, and the sum of three thousand two hundred and twelve dollars and thirty cents, as set forth in said answer, and leave them with Isaac Romaine, Esq., one of the masters of this court, for the space of ten days, subject to the examination of said petitioner."

The right of the court of chancery to make such an order cannot be questioned, and has long been settled both by established custom and well-known authority. It is one of the inherent powers of a court of equity.

It will be necessary first to consider whether the appellants did, in fact, refuse to comply with the order of the court. Counsel have mutually agreed that the evidence furnished to this court in the argument of the whole case shall be used as the record on this appeal, and a resort to this evidence is required in determining this question.

In the answer of the defendants it was alleged that there had been paid by the defendant Peter Lawless certain sums of money "for which he had vouchers ready to be produced and proved." This was a positive declaration to the court that the vouchers would, if required, be produced and proved, and the order of the court in answer to the complainant's petition was to produce

these receipts, vouchers and other evidences in writing, "as set forth in the answer." The order was broad enough in its terms to require the production of whatever was in the possession of the defendants as evidence of the payments claimed to have been made. There is no ambiguity in the language of the order, and its purport is clear. It is admitted that the order was duly served. The only paper produced in obedience to this order was one general receipt for the payment of four separate sums of money, aggregating $6,485. There was no dispute about two of these payments, one of $1,400 and one of $800; but the other two payments claimed, one of $1,685 and one of $2,600, were earnestly contested, which resulted in their disallowance by the court in the final decree. The complainant's case was prepared in the belief that this one paper or "omnibus receipt," so called, lodged with the master, was the only evidence in the possession of the defendants of the payments alleged to have been made. But in the progress of the case, the defendant Peter Lawless testified that he had previously held separate receipts for the four payments mentioned, and that they were given to his attorney, O'Sullivan, who in turn testified that he took them to the office of Romaine, in Jersey City, accompanied by Mr. Manning, one of the attorneys of record in this cause. But it is admitted they were not left there, but were taken away and afterwards lost by O'Sullivan while in a state of intoxication. Romaine, the master, on the other hand, says that he never saw the alleged four separate receipts, or any paper except the one deposited with him, on which the four payments were written, although something may have been said in his office about other receipts. Taking only the evidence of the defendants' witnesses as to what occurred at the master's office, it is an admission that the defendants' attorneys had with them the receipts and vouchers that had been called for by the court's order, and that they were requested by the master to leave with him all the papers they had relating to the case, and that after deliberating on the subject they refused to leave any of them except the one containing a statement of the four payments before referred to.

Lawless v. Fleming.

The voluminous testimony pertaining to the alleged loss of the separate receipts, and to the character of the single paper left with the master, need not be reviewed in this inquiry, as those matters relate to the merits of the whole case. It is sufficient to say that the result of a careful examination of that part of the record which pertains to the non-production of the required receipts and vouchers, leads us to the conclusion that there was a studied attempt to evade the plain mandate of the court, and a deliberate refusal to comply with its order. No other conclusion can, we think, be drawn from the evidence.

It is now set forth in said petition that one of the lost receipts has been returned to one of the attorneys of the defendants in an anonymous letter. By whom, where, or under what circumstances it was found, remains a mystery. No reason is given why the finder should desire to conceal his identity or maintain such secrecy. But these facts only render the case a very peculiar one, and certainly form no basis for judicial action in the present situation of the case. They do not affect in any way the substantial issue raised by this appeal, which is whether the petitioners wilfully refused to obey an order of the court to produce certain papers and vouchers. It is admitted by the petitioners that this receipt now said to be found was in the possession of the counsel of the defendants at the time the order was made; that it was taken in pursuance of that order to the office of Romaine, in whose custody they were commanded to leave it; that the master advised them to deposit it with him, and the request was deliberately refused. The present mysterious discovery cannot alter these admitted facts, which form a part of the evidence in the case. We therefore hold that there was no error in the refusal of the vice-chancellor to open the decree.

But the inability of the defendants to now offer this receipt in evidence or use it in the case is only a necessary consequence of the court's exercise of its inherent right to refuse for good and sufficient reasons to open the decree, and does not rest upon any statutory prohibition by reason of *Gen. Stat. p. 2559 § 157.* The title of that act is "An act to regulate the practice of the courts of law," and its provisions do not relate to a court of

Lawless v. Fleming.

equity.   By the incorporation of the act of 1855 (*P. L. of 1855 p. 668*) into the revision of March 27th, 1874, its operation is limited to courts of law.   To hold otherwise is to maintain that the body of an act · may conflict with its title.   If this section can be applied to a court of equity, other sections of the Practice act might be applied contrary to the purpose of the act as expressed by its title.

The vice-chancellor also decides that the court ought, in the exercise of a sound discretion, to refuse to open the decree in this case, and we express our concurrence in that conclusion. In *Warner* v. *Warner, 4 Stew. Eq. 549,* in the course of some very cogent reasoning on the subject of opening a decree, the late Vice-Chancellor Van Fleet said: "I am sure it cannot be granted without giving litigants a most dangerous license under which they will be at liberty to experiment and trifle with the administration of justice as their caprice or interest may dictate." This language is peculiarly applicable to the present case.

The court can, of course, punish the party refusing to comply with its order as for a contempt, but this is not obligatory. While all the proceedings in a cause are under the direct control of the same court, the imposition of this penalty can be properly left to the discretion of the judge.

The order of the court of chancery should be affirmed and the record in the cause returned to that court.

*For affirmance*—COLLINS, DEPUE, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, HENDRICKSON, NIXON, VREDENBURGH—9.

*For reversal*—DIXON, GARRISON, ADAMS, BOGERT—4.