27 N.J. Super. 304 (1953)
99 A.2d 368
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT,
v.
WALTER G. WINNE, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 17, 1953.
Decided September 15, 1953.
*306 Before Judges BIGELOW, SMALLEY and ARTASERSE.
Mr. David H. Harris, Special Deputy Attorney-General, argued the cause for the appellant (Mr. Theodore D. Parsons, Attorney-General, and Mr. Albert M. Ash, Deputy Attorney-General, attorneys).
Mr. Joseph Weintraub argued the cause for the respondent (Mr. John W. McGeehan, Jr., attorney).
*307 The opinion of the court was delivered by BIGELOW, J.A.D.
The State appeals from two orders made by Judge Francis in the Law Division of the Superior Court. By one, the court authorized the defendant to inspect and copy certain papers; by the other, the court granted in part the defendant's motion for a bill of particulars. The defendant cross-appeals from the denial of certain other particulars.
The indictment alleges that the defendant, from 1944 continuously to the day of the finding of the indictment, November 28, 1951, was Prosecutor of Bergen County, charged with the duty of using "all proper, reasonable and effective means and all lawful means within his power, and diligence for the detection, arrest, indictment and conviction of offenders against the laws"; that he "then and there well knew" the facts which are alleged in the indictment and which are summarized below, and that nevertheless he willfully neglected and omitted to perform his duty as prosecutor above stated, in respect to the several alleged violations of the law:

Counts 1 to 4:
During certain specified periods of time "and on divers other dates and times," "there were kept and maintained * * * certain gaming and betting houses wherein gambling was conducted by means of dice games, so-called,"  at 2075 Lemoine Avenue, Fort Lee; at 1010 Palisade Avenue, Fort Lee; at Costa's Barn, on Route 6, Lodi, and at 224-228 Union Street, Lodi.
The same first four counts also allege: At some unstated time "gaming by means of instruments, engines, apparatus and devices having figures and numbers thereon, were used and employed and conducted * * * and furniture and implements used for the playing of unlawful games were kept, stored and possessed" in the Boroughs of Fort Lee and Lodi.

*308 Counts 5 to 16:

During certain specified periods "and on divers other dates and times," "there were kept and maintained * * * certain gaming and betting houses wherein gaming, betting, bookmaking upon the running of horses and lotteries were conducted, and the practice of bookmaking and betting upon the events of horse races were maintained and conducted,"  at 62 Grand Avenue, Little Ferry; at 145 Marshall Avenue, Little Ferry; at Star Motors, on Route 6, Little Ferry; at 454 Palisade Avenue, Cliffside Park; at 452 Palisade Avenue, Cliffside Park; at 255 Garibaldi Avenue, Lodi; at 7 Nicholson Street, Lodi; at 11 Terhune Avenue, Lodi; at 244 Harrison Avenue, Lodi; at 95 Westervelt Place, Lodi; at 159 Westminster Place, Lodi, and at 178 Westminster Place, Lodi.

Counts 17, 18 and 19:
On or about September 2, 1948, Mr. Winne "did receive a complaint that one Henry Wysock, who was then a member of the Borough of Rutherford Police Department in the said County of Bergen, was a corrupt public official." On October 8, 1948, he received like complaints against two other members of the Rutherford Police Department; he did omit to use all proper means "for the detection, arrest, indictment and conviction" of the three police officers. "But on the contrary, then and there unlawfully did suffer and permit" them "to continue in public office." The indictment does not allege that the policemen were, in fact, corrupt or that the complaints against them were true.
Such is the broad sweep of the indictment, every count of which our Supreme Court has upheld (State v. Winne, 12 N.J. 152) and the defendant must be prepared to meet.
The first order appealed from gave the defendant the right to inspect and make copies of "all papers, documents, correspondence, books and all other records which were part of the files" of the Bergen County prosecutor's office at the time Mr. Winne was superseded.
*309 It is argued that a great part, probably the most persuasive part, of the evidence for both the State and the defendant, is to be found in the files of the prosecutor's office for the period from Mr. Winne's appointment, April 22, 1944, until he was suspended from his office, December 1, 1950: correspondence, complaints received, reports of detectives and investigators, files tracing the progress of prosecutions from indictment through trial and final disposition. In these papers may be clear proof of the action or lack of action taken by the prosecutor and his staff in respect to the sundry matters charged in the indictment. Not only the files relating to those particular matters may be evidential on the trial, but papers relating to other matters that required the attention of the prosecutor, may be material to the question whether the prosecutor's failure to act  if he did fail  in the matters alleged in the indictment, was willful or whether it was brought about because other matters of equal or greater importance consumed his time and his energy. Files not evidential per se may be a proper means for refreshing the memory, or may suggest lines of investigation as part of the preparation for trial.
The State offers to give defendant a list of all papers that it will put in evidence, and is willing that he should inspect and make copies of them. The State is unwilling, however, that he should look through the files for documents which may assist his defense. We emphasize that the indictment covers a period of six years, during which thousands of matters were handled by Mr. Winne and his staff. It seems to us unlikely that the defendant recalls exactly what steps were taken by his office with reference to every matter charged in the indictment. He should be allowed to search the files and find there, if he can, proof that may raise a reasonable doubt of his guilt.
A case quite similar to the present is People v. Gerold, 265 Ill. 448, 107 N.E. 165 (Ill. Sup. Ct. 1914), where a city treasurer, indicted for embezzlement, was given leave before trial to examine the account books of his office which had been seized by the State.
*310 The papers which Judge Francis allowed the appellant to inspect are not, in relation to the present prosecution, the work product of the State, comparable to the confession and the signed statements of witnesses considered in State v. Tune, 13 N.J. 203 (1953). The papers have not even been ferretted out or collected by the prosecution.
Power to require a party to permit his opponent to inspect documents in his possession was inherent in our Court of Chancery. Lawless v. Fleming, 56 N.J. Eq. 815 (E. & A. 1898). The power was part of the general jurisdiction for the purpose of discovery. Copper King v. Robert, 76 N.J. Eq. 251 (Ch. 1909). By statute, the courts of law borrowed from equity the principle of discovery, including the inspection of documents. Eaton Axle & Spring Co. v. Breeze Corp., 10 N.J. Misc. 1100 (Sup. Ct. 1932), affirmed 111 N.J.L. 282 (E. & A. 1933). And in recent years, the defendants in criminal causes have been given the right to inspect documents in possession of the State. 23 C.J.S., Criminal Law, § 955, and cases there cited. The slow progress of the law is traced in People ex rel. Lemon v. Supreme Court, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200 (N.Y. Ct. App. 1927). In our own State, we have State v. Cicenia, 9 N.J. Super. 135 (App. Div. 1950), affirmed 6 N.J. 296 (1951), and State v. Tune, supra. The exercise of the power to afford a defendant an opportunity to inspect documents controlled by his opponent, rests in the sound discretion of the court in which the cause is pending. Markle v. Local Union, 129 N.J. Eq. 32 (E. & A. 1940); P. & D. Mfg. Co. v. Barnes, 120 N.J.L. 229 (Sup. Ct. 1938); State v. Cicenia, supra. The basic philosophy of our law was well stated by Justice Carpenter in Daly v. Dimock, 55 Conn. 579, 12 A. 405, 406 (Sup. Ct. Err. 1887).
"The law presumes every man to be innocent until the contrary appear, and its policy is to give every man accused of crime a reasonable opportunity to prepare and present to a jury his defense. The state does not desire to procure a conviction by any unfair concealment or surprise. It concerns itself quite as much in having the innocent acquitted as in having the guilty convicted. *311 While it affords every reasonable facility for the prosecution of offenders, it is no less solicitous to give to every accused person a fair and reasonable opportunity to make his defense."
And, as Professor Wigmore put it, "The possibility that a dishonest accused will misuse such an opportunity is no reason for committing the injustice of refusing the honest accused a fair opportunity of clearing himself." Wigmore, Evidence, § 1863.
It is clear that the inspection allowed to defendant in the instant case will promote justice; the order was within the discretionary power of the court and will be affirmed.
Now for the bill of particulars that the court ordered the State to furnish the defendant. As already pointed out, the several counts of the indictment charge the maintenance of gambling resorts during sundry periods; in the first count, for example, from December 10, 1947, to December 1, 1950, and "on divers other dates and times." And likewise the other counts. The court ordered the State to specify "the other dates and times." The second branch of the first four counts charge that there was "gaming by means of instruments, engines, apparatus and devices having figures and numbers thereon. The State was required to give particulars if gambling other than by dice games was charged. Counts 5 to 16 charge "gaming, betting, bookmaking." The State was ordered to disclose what kind of "gaming" it would attempt to prove. The propriety of ordering the foregoing particulars is too apparent to justify an exposition of the subject.
The court also ordered the prosecution to state whether it claimed that the bettors (other than bookmakers) congregated at the premises mentioned in the 5th to 16th counts. This seems to us to lie within the discretion of the Law Division.
The indictment alleges that the defendant "well knew" of the sundry violations of the law charged. The prosecution was ordered to furnish particulars as to when and how the defendant acquired such knowledge. Such *312 knowledge may be inferred where the circumstances proved are such that a man of ordinary intelligence and caution, standing in the defendant's shoes, would have been satisfied that the particular violations of the law charged in the first 16 counts had been or were being committed. State v. D'Adame, 84 N.J.L. 386 (E. & A. 1913). As a practical matter, we do not see how the State can give particulars of such circumstances and we think Judge Francis did not intend to require particulars thereof. But it may be that the State expects to prove notice by direct evidence. If so, we doubt that defendant should be left ignorant of that branch of the State's case. We are satisfied that the trial judge did not abuse his authority or go beyond the scope allowed him in ordering the particulars.
The remaining particulars to which the State objects relate to the last three counts which allege that defendant received complaints concerning three Rutherford policemen. The indictment does not allege that the officials were corrupt but only that they were charged with being corrupt. We gather from the argument the State's theory that, whether the charges were true or not, the prosecutor was in duty bound to investigate and use his best efforts to secure indictments and convictions. As we understand it, the State contends that it is not the function of the prosecutor to determine for himself whether or not a complaint is true; that is the office of the grand and petty juries. Let us assume (without so deciding) that the theory of the State is sound. Surely the duty of the prosecutor depends much upon the nature of the "complaint." If it is a formal complaint, made before a magistrate and forwarded by the magistrate to the prosecutor's office, the prosecutor should lay it before the grand jury. If the complaint is embodied in a letter written by a reputable citizen, it may well be the duty of the prosecutor to make some investigation. An anonymous telephone call, giving no details of the alleged corruption, could probably be disregarded. The court ordered the State to give particulars with reference to the complaints against the three policemen: Were they formal complaints? Were they *313 oral or written? Who made them? What did they charge? Certainly these particulars were properly ordered.
The order for the bill of particulars will be affirmed on the State's appeal.
The defendant appeals from the denial of his motion for certain particulars. The indictment was based primarily on R.S. 2:182-5, that puts on the prosecutor the duty of using "all reasonable and lawful diligence for the detection, arrest, indictment and conviction of offenders against the laws." The indictment charges that the defendant omitted "to perform the said public duties so enjoined upon him" by using and exercising "all proper, reasonable and effective means and all lawful means within his power." The Supreme Court, construing the indictment, said: "According to the indictment, he did nothing; he completely failed" to investigate, etc. And again, "Here the charge is non-feasance, a charge of doing nothing." And still again, "It is here charged that he did nothing." The State does not seem to accept this interpretation of the indictment. It takes the position, if we are not mistaken, that while the defendant may have taken some action in respect to the alleged gambling houses, he did not do enough; he should have done something more. The defendant asked that the State be directed to specify the steps that he should have taken but did not take. The court denied the motion, properly we believe.
The other particulars which were denied require no comment.
The order is affirmed but without costs.