43 N.J. 560 (1965)
206 A.2d 359
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES COOK, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued November 16, 1964.
Decided January 13, 1965.
*561 Mr. Roger H. McGlynn argued the cause for the appellant.
Mr. Brendan T. Byrne, County Prosecutor of Essex County, argued the cause for the respondent (Mr. Philip R. Glucksman, Assistant County Prosecutor, of counsel and on the brief).
*562 The opinion of the court was delivered by JACOBS, J.
The defendant James Cook was arrested and later indicted on murder charges. While in custody he was examined by psychiatrists designated by the State. In due course they submitted their medical reports which are now in the possession of the county prosecutor. Assigned defense counsel moved for an order (1) appointing a duly qualified physician to conduct a psychiatric examination of the defendant and (2) directing that the prosecutor permit him to examine the State's medical reports. After hearing argument, the trial court designated Dr. Stern "to conduct a psychiatric examination of the defendant for the purpose of determining his mental competency and to assist the defendant's counsel in the case." It denied the motion for examination of the State's medical reports and leave to appeal from this denial was granted. Briefs were submitted and the matter was duly argued. In the meantime, Dr. Stern examined the defendant and submitted his report to defense counsel who now offers to permit its inspection on condition that he be permitted inspection of the State's medical reports. The prosecutor has rejected this offer, contending that the trial court's action was within its discretionary power and citing State v. Tune, 13 N.J. 203 (1953), and State v. Reynolds, 41 N.J. 163 (1963), cert. denied 377 U.S. 1000, 84 S.Ct. 1934, 12 L.Ed.2d 1050 (1964).
At common law, discovery before trial was generally unavailable in both civil and criminal cases. See Cardozo, C.J., in People ex rel. Lemon v. Supreme Court, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200 (1927). Litigants entered the courtroom in the dark and the trial often became a contest of legal tactics rather than a search for truth and justice. Legislative departures were followed by narrowing judicial decisions. See Wolters v. Fidelity Trust Co., 65 N.J.L. 130, 132 (Sup. Ct. 1900); Allison v. Bannon, 128 N.J.L. 161, 163 (E. & A. 1942). These remained the law of our State until our judicial structure was revised and implemented with rules embodying modern discovery principles. As Chief Justice Vanderbilt put *563 it during the induction of the Supreme Court, "litigation is no longer to be thought of as a battle of wits" and pretrial discovery procedures are to be directed towards "facilitating the establishment of truth, which is the ultimate aim in the administration of justice." Rutgers Law Review, Special Number, 1948, p. 69.
Since their adoption in 1948, our civil practice rules have been applied liberally and with awareness that the interests of truth and justice are best served by broad mutual discovery before trial. See Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338 (1951); Interchemical Corp. v. Uncas Printing & Fin. Co., Inc., 39 N.J. Super. 318, 325 (App. Div. 1956). In criminal proceedings, mutually broad discovery is generally unobtainable because of the defendant's constitutional privilege against self-incrimination. See State v. Tune, supra, 13 N.J., at p. 211; but cf. Jones v. Superior Court, 58 Cal.2d 56, 22 Cal. Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213 (1962); Louisell, Criminal Discovery: Dilemma Real or Apparent?," 49 Calif. L. Rev. 56, 87-90 (1961); Goldstein, "The State and The Accused: Balance of Advantage in Criminal Procedure," 69 Yale L.J. 1149, 1197-1198 (1960). Influenced largely by this factor, the course taken by our criminal practice rules has differed somewhat from that of the civil practice rules. Thus they originally did not include any pretrial discovery provision such as Rule 16 of the Federal Rules of Criminal Procedure, although they did include a general subpoena provision modeled after Rule 17 of the Federal Rules. See R.R. 3:5-10(c); State v. Bunk, 63 A.2d 842 (N.J. Cty. Ct. 1949); State v. Cicenia, 9 N.J. Super. 135, 137 (App. Div. 1950), modified 6 N.J. 296 (1951), cert. denied 350 U.S. 925, 76 S.Ct. 215, 100 L.Ed. 809 (1955). However, omission of a specific discovery rule did not at all impair the inherent powers of the court to order discovery when justice so required. See State v. Moffa, 36 N.J. 219, 222 (1961); State v. Murphy, 36 N.J. 172, 180 (1961); State v. Butler, 27 N.J. 560, 600 (1958); State v. Winne, 27 N.J. Super. 304, 310 (App. Div.), certif. denied 13 N.J. *564 527 (1953); State ex rel. Helm v. Superior Court of Cochise County, 90 Ariz. 133, 367 P.2d 6, 8-10 (1961); 6 Wigmore, Evidence § 1850, at p. 395 (3d ed. 1940).
In State v. Cicenia, supra, the defendant contended that under the subpoena rule he had an absolute right to inspect a copy of his confession in the possession of the State. The Appellate Division rejected his contention while indicating that the court had "inherent discretionary power" to compel the discovery, citing State v. Haas, 188 Md. 63, 51 A.2d 647 (1947) and Shores v. United States, 174 F.2d 838 (8 Cir. 1949). See Traynor, "Ground Lost and Found in Criminal Discovery, 39 N.Y.U.L. Rev. 228 (1964); Everett, Discovery in Criminal Cases  In Search of a Standard," 1964 Duke L.J. 477, 491. On appeal, this Court unanimously embraced the view that the defendant is entitled to pretrial discovery of his confession when, in the sound discretion of the trial judge, the interests of justice so require. 6 N.J., at p. 300.
In State v. Tune, supra, the trial court granted the application of the defendant, charged with murder, for a copy of his confession. Assigned counsel had represented in an affidavit that the defendant could tell them nothing about his statement and that its inspection in advance of trial was necessary for the fair conduct of his defense. In an opinion subscribed to by four members of this Court, the trial court's action was reversed; three members dissented, taking the position that under Cicenia the trial court had acted justly and well within the bounds of its discretion. In support of their holding, the majority invoked the spectres of perjury and intimidation of witnesses, and the supposed imbalance which would result from the allowance of discovery to the defendant while denying it to the State because of the constitutional privilege. The minority persuasively stressed that discovery has long since been found to be a sound tool for truth and it rejected the spectres and the supposed imbalance as any sufficient basis for denying inspection of his own confession to a defendant, particularly one who was on trial for his life. 13 N.J., at pp. 227-235. Following the decision in *565 Tune, R.R. 3:5-11 was adopted; it became effective on September 9, 1953 and now reads as follows:
"Upon motion of a defendant made at any time after the filing of the indictment or accusation, the court shall order the prosecutor to permit the defendant to inspect and copy or photograph designated books, tangible objects, papers or documents other than written statements or confessions made by the defendant obtained from or belonging to the defendant and may, if the interests of justice so require, order the prosecutor to permit the defendant to inspect and copy or photograph written statements or confessions made by the defendant and designated books, tangible objects, papers or documents obtained from others except written statements or confessions."
In State v. Johnson, 28 N.J. 133 (1958), this Court had occasion to review the views expressed by the majority and minority in Tune and to apply R.R. 3:5-11. The defendant had been indicted for murder and his assigned counsel sought inspection of his confession, certifying that such inspection was necessary in preparation for trial and presentation of the defense. The trial court denied the application but its action was, in effect, rejected in an opinion which embraced the position of the minority in Tune and held that pretrial inspection of a defendant's statement should be ordered where he cannot recall the statement with sufficient detail, unless the State shows that inspection would "improperly hamper the prosecution." 28 N.J., at p. 141; State v. Murphy, supra, 36 N.J., at pp. 181-182. Since the decision in Johnson, the ordinary procedure has been to give defendants copies of their own statements as a matter of course and nothing has been brought to our attention to suggest that this has impaired any prosecutions or has failed to promote justice. See People v. D'Andrea, 20 Misc.2d 1070, 195 N.Y.S.2d 542, 544-545 (Cty. Ct. 1960).
In Johnson, the defendant had also applied for inspection of "all statements, notes and memorandums made by persons whom the State intends to offer as witnesses." 28 N.J., at p. 135. While the breadth of the State's investigatory means in contrast to the limited means of the defendant was recognized, *566 the blanket discovery applied for was not allowed. In the course of his opinion, the Chief Justice noted (1) that when the witnesses are called to testify at the trial the defendant will admittedly have the right to inspect their earlier statements for purposes of cross-examination (State v. Hunt, 25 N.J. 514 (1958)), (2) that the sweeping mode of pretrial discovery sought by the defendant should be deferred pending the light of further study and experience in our State and elsewhere, and (3) that R.R. 3:5-11 now flatly bars pretrial discovery of "written statements or confessions" (other than the statements or confessions of the defendant himself) and no showing had been made which would invite relaxation of R.R. 3:5-11 under R.R. 1:27A. 28 N.J., at pp. 143-144; cf. Krantz, "Pretrial Discovery in Criminal Cases: A Necessity for Fair and Impartial Justice," 1 Modern Practice Commentator 206, 212 (1963); Traynor, supra, 39 N.Y.U.L. Rev., at p. 244; Funk v. Superior Court, 52 Cal.2d 423, 340 P.2d 593 (1959).
The gradually evolving liberalization of discovery in criminal proceedings finds recent illustration in our decision in State v. Moffa, supra, 36 N.J. 219. There the defendant was indicted for suborning a witness to testify falsely before a grand jury; we directed that he be allowed pretrial inspection of the testimony of the witness. Earlier in State v. Winne, supra, 27 N.J. Super. 304, the defendant, a sometime prosecutor, had been indicted for nonfeasance in office; the Appellate Division sustained the trial court's allowance of pretrial inspection of the files of his former office. In contrast to the foregoing, the defendant in State v. Huff, 14 N.J. 240, 252 (1954), though charged with murder, was denied pretrial inspection of an autopsy report; citing State v. Tune, supra, 13 N.J. 203, the matter was said to be within the discretion of the trial court. 14 N.J. 252.
In view of R.R. 3:5-11 and Johnson, there would now appear to be little question that, absent a showing by the State that its prosecution would be improperly hampered (28 N.J., at p. 141), a defendant is entitled to pretrial inspection of the *567 State's objective documents such as autopsy reports, hospital reports and other scientific and laboratory reports, including chemical analyses, blood tests, etc. Here there is admittedly no danger of the perjury and intimidation suggested in Tune and the defendant merely seeks to lessen the imbalance which may result from the State's early and complete investigation in contrast to his own late and limited investigation. Such inspection is permitted not only in California, which has taken a wide approach (Walker v. Superior Court, 155 Cal. App.2d 134, 317 P.2d 130 (D.C. App. 1957)), but also in many of the states which have taken a somewhat narrower approach. See People v. Preston, 13 Misc.2d 802, 176 N.Y.S.2d 542, aff'd sub nom, Silver v. Sobel, 7 App. Div.2d 728, 180 N.Y.S.2d 699 (1958); State ex rel. Helm v. Superior Court of Cochise County, supra, 90 Ariz. 133, 367 P.2d 6; cf. Layman v. State, 355 P.2d 444 (Okla. Ct. Crim. App. 1960).
In State ex rel. Helm v. Superior Court of Cochise County, the defendant sought pretrial inspection of a medical report containing the results of a blood alcohol test. The trial court allowed the inspection. Its action was affirmed in an opinion which noted that the defendant would be able to inspect the report at trial and no sound reason existed for denying him that opportunity before trial; it also noted that inspection would not afford the defendant any opportunity for fabricating evidence to contradict the report. In People v. Preston, the defendant applied for pretrial inspection of hospital records and an autopsy report; in the course of its opinion granting the application, the court had this to say:
"Some states reject the rule that pre-trial discovery and inspection may extend to the defendant's admissions or confessions or to witnesses statements. This is on the theory, that efforts may be made to pattern a defense or to suborn the witnesses. But very few states now refuse discovery or inspection of physical evidence, public documents or written reports of autopsies, chemical analyses or blood tests. These cannot be altered. There is no purpose served in denying the defendant access to these records unless indeed the People have so great an interest in convicting accused parties as to justify interposing every and any obstacle to the disclosure of facts." 176 N.Y.S.2d, at p. 548.
*568 The federal discovery rule is not as permissive as R.R. 3:5-11 and an advisory committee has recently submitted a proposed revision of the federal rule which would greatly broaden its scope. See Second Preliminary Draft of Proposed Amendments to Rules of Criminal Procedure, 34 F.R.D. 411, 421 (1964). It would expressly empower the trial court to permit pretrial inspection of the defendant's statements or confessions and his grand jury testimony, along with the "results or reports of physical or mental examinations, and of scientific tests or experiments made in connection with the particular case." 34 F.R.D., at pp. 421-422. It would also authorize the trial court to condition its inspection order with a provision that the defendant permit the government to inspect "statements, scientific or medical reports, books, papers, documents or tangible objects, which the defendant intends to produce at the trial." 34 F.R.D., at p. 422. In commenting on this proposal, the committee had this to say:
"* * * While the government normally has resources adequate to secure the information necessary for trial, there are some situations in which mutual disclosure would appear necessary to prevent the defendant from obtaining an unfair advantage. For example, in cases where both prosecution and defense have employed experts to make psychiatric examinations, it seems as important for the government to study the opinions of the experts to be called by the defendant in order to prepare for trial as it does for the defendant to study those of the government's witnesses. Or in cases (such as antitrust cases) in which the defendant is well represented and well financed, mutual disclosure so far as consistent with the privilege against self-incrimination would seem as appropriate as in civil cases. State cases have indicated that a requirement that the defendant disclose in advance of trial materials which he intends to use on his own behalf at the trial is not a violation of the privilege against self-incrimination. See Jones v. Superior Court, 58 Cal.2d 56, 22 Cal. Rptr. 879, 372 P.2d 919 (1962); People v. Lopez, 60 Adv. Cal. 171, 32 Cal. Rptr. 424, 384 P.2d 16 (1963); Comment, The Self-Incrimination Privilege: Barrier to Criminal Discovery, 51 Calif. L. Rev. 135 (1963); Note, 76 Harv. L. Rev. 838 (1963)." 34 F.R.D., at pp. 424-425.
See also Louisell, supra, where the view is expressed that a discovery order conditioned upon some fair disclosure by the defendant "would be constitutionally permissible and, in some *569 cases at least, administratively feasible." 49 Calif. L. Rev., at p. 90; cf. Goldstein, supra, 69 Yale L.J., at pp. 1197-1198.
In the case at hand, the defendant has explicitly agreed that inspection of the State's psychiatric reports be accompanied by inspection of the defendant's psychiatric report; and none of the reasons advanced by those hostile to the expanding doctrine of discovery in criminal proceedings has any real bearing here. There is no likelihood of intimidation or perjury and the State, which has already had broad discovery of the defendant's mental condition, is in no position to talk about imbalance or unfairness. In ordinary course, examination by State psychiatrists should be in accordance with the terms fixed by court order entered after application made pursuant to due notice to defense counsel. No point in this regard has been made before us, and we assume that the State conducted its examination fairly for the purpose of determining the defendant's competency to plead and stand trial and does not contemplate using any statements by the defendant to the psychiatrists to support its charges of murder against him. See Early v. Tinsley, 286 F.2d 1, 3 (10 Cir. 1960), cert. denied 365 U.S. 830, 81 S.Ct. 717, 5 L.Ed.2d 708 (1961); Oaks v. People, 150 Colo. 64, 371 P.2d 443, 450-451 (1962).
The defendant simply urges, and we agree, that the reports of the examination should now be made available to him for inspection in order that he may fairly defend himself. The State has made no showing nor has it given any indication that the inspection would improperly hamper the prosecution. Defense counsel, whose investigatory resources are far from those of the State, should have the benefit of all that is in the reports by the State's psychiatrists to the just end that he may intelligently advise as to the defense and properly prepare for trial. It must be borne in mind that even if the defendant is sane within the legal definitions, he is nonetheless entitled to introduce evidence relating to background and to any abnormal or subnormal mental condition; such evidence may bear heavily on the degree of guilt and on the *570 measure of punishment. See State v. DiPaolo, 34 N.J. 279, 294-295, cert. denied 368 U.S. 880, 7 L.Ed.2d 80 (1961); State v. Mount, 30 N.J. 195, 215-224 (1959); State v. White, 27 N.J. 158, 182-189 (1958) (concurring opinion).
The county prosecutor's function is not to convict but to see that justice is done; he must seek the truth whether it be helpful to the State or the defendant. See State v. Hunt, supra, 25 N.J., at p. 530. He must deal fairly and may not constitutionally withhold material evidence which favors the defendant. See Brady v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, 218 (1963). Cross-disclosure of the psychiatric reports, as now sought by the defendant, would not only aid in ferreting out the truth but would also avoid any question of unconstitutional withholding. See Ashley v. State of Texas, 319 F.2d 80 (5 Cir.), cert. denied 375 U.S. 931, 84 S.Ct. 331, 11 L.Ed.2d 263 (1963).
In his brief and during oral argument, the county prosecutor stressed that the trial court's action was within the discretionary authority vested in it by R.R. 3:5-11 and State v. Reynolds, supra, 41 N.J. 163. He urged that if there is to be a departure it should await formal rule revision as suggested in State v. Johnson, supra, 28 N.J. 133. Although R.R. 3:5-11 precludes pretrial discovery of "written statements or confessions," it is doubtful that it ever had in mind documents such as medical reports by psychiatrists engaged by the State (cf. State v. Moffa, supra, 36 N.J., at pp. 221-223); and while some of the general language in Reynolds might be taken as pointing that way, the holding there was that a defendant who suffered no prejudice could not complain after conviction about the denial of a pretrial application for inspection. 41 N.J., at p. 182. Johnson did state that the troublesome problem of blanket pretrial discovery of statements by prospective witnesses should await exploration at judicial conference and formal rule revision. 28 N.J., at p. 143. There the Court was not talking about psychiatric reports or comparable documents but about the wider pretrial disclosures which are still thought by some to entail undue *571 imbalance and dangers of intimidation and perjury. These elements are not of significance here and it would be inexcusable to deny the relief now justly sought while future determination of the larger criminal discovery problem with comprehensive rule revision is being awaited. See R.R. 1:27A.
Reversed.
For reversal  Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN  7.
For affirmance  None.