85 N.J. 218 (1981)
426 A.2d 50
STATE OF NEW JERSEY IN THE INTEREST OF W.C., A JUVENILE.
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
SAMUEL WALLS, DEFENDANT-RESPONDENT.
The Supreme Court of New Jersey.
Argued December 2, 1980.
Decided February 26, 1981.
*219 Lawrence H. Posner, Assistant Prosecutor, argued the cause for appellant State of New Jersey (A-125) (James T. O'Halloran, Hudson County Prosecutor, attorney).
Michael H. Prindaville, Assistant Prosecutor, argued the cause for appellant (A-126) (James T. O'Halloran, Hudson County Prosecutor, attorney).
Allan J. Nodes, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (John J. Degnan, Attorney General of New Jersey, attorney).
*220 William O. Perkins, Jr. argued the cause for respondent W.C. (Perkins & Cassidy, attorneys).
Maurice J. Frager argued the cause for respondent Samuel Walls (Maurice J. Frager, attorney; Christopher C. Castens, on brief).
James K. Smith, Jr., Deputy Public Defender, argued the case for amicus curiae Public Defender (Stanley C. Van Ness, Public Defender, attorney; James K. Smith, Jr. and James Daniels, Assistant Deputy Public Defender, of counsel and on brief).
The opinion of the Court was delivered by SCHREIBER, J.
These two appeals raise the same principal issues of whether a defendant in a criminal proceeding may be entitled to a pretrial identification lineup, and, if so, under what circumstances. Both cases come to us before trial.
In State v. Walls, the defendant moved to compel the prosecutor to arrange a lineup to be viewed by the victim of the crime. After the trial court granted defendant's motion, the prosecutor's motion for leave to appeal was granted by the Appellate Division. While the case was pending there, we granted the prosecutor's motion for direct certification pursuant to R. 2:12-2(a). 85 N.J. 469 (1980).
In State in the Interest of W.C., an oral motion was made on behalf of a juvenile defendant in the Juvenile and Domestic Relations Court to compel the prosecutor to arrange for a pretrial identification lineup to be viewed by the victim and a witness. The trial court ordered a lineup to be viewed by the victim and such other witnesses the State proposed to produce at the trial relative to identification. The prosecutor's motion for leave to appeal was denied by the Appellate Division. We granted the State's subsequent motion to this Court for leave to appeal. 85 N.J. 469 (1980). Oral argument on both cases was heard at the same time and the legal discussion which follows is equally applicable to both cases.

*221 I.
The State raises as a threshold obstacle to the defendants' motions the lack of judicial power to compel a lineup. It is important at the outset to understand and appreciate the role which the pretrial lineup would play in a defendant's case. Simply put, it is a discovery mechanism which may lead to relevant material evidence and assist in preparation of the defense. The lineup has been frequently employed by the State both as part of its investigative process and for discovery purposes.
Although defendant has no constitutional right to pretrial lineup discovery, see Cicenia v. Lagay, 357 U.S. 504, 510-511, 78 S.Ct. 1297, 1300, 2 L.Ed.2d 1523, 1528-1529 (1958); State v. Johnson, 28 N.J. 133, 136 (1958), we have no doubt that a Court has the inherent power to order discovery when justice so requires. This inherent power was used in State v. Butler, 27 N.J. 560, 601 (1958), to compel a witness to submit to a psychiatric examination by the defendant's expert, in State v. Moffa, 36 N.J. 219, 222 (1961), to entitle a defendant to inspect a witness's grand jury testimony, and in State v. Cook, 43 N.J. 560, 563 (1965), to permit the defendant to examine the State's medical reports of its experts. See also State v. Murphy, 36 N.J. 172, 180 (1961); State v. Hunt, 25 N.J. 514, 524 (1958); State v. Winne, 27 N.J. Super. 304, 310 (App.Div. 1953), certif. den. 13 N.J. 527 (1953).
This Court's policy concerning pretrial discovery has been to encourage the presentation of all relevant material to the jury as an aid in the establishment of truth through the judicial process. The pretrial discovery practice promotes the quest for truth. See State v. Cook, 43 N.J. at 563. The adversary system, modified in criminal matters as it is by the prosecutor's role to ensure "that justice shall be done," Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 635, 79 L.Ed. 1314, 1321 (1935), is only a means to attain that goal. Uninhibited discovery in criminal, unlike civil, proceedings cannot exist, primarily because defendant's *222 constitutional privilege against self-incrimination limits reciprocal discovery in criminal matters. As a result our discovery rules in criminal proceedings have had a different history and are more limited in scope than in civil matters. See State v. Cook, 43 N.J. at 562-566, for development of criminal discovery rules. We have from time to time moved either by rule or by ad hoc determination to expand discovery in criminal proceedings as we have gained experience or profited from the experience of others. See State v. Montague, 55 N.J. 387, 395, 398 (1970).
The State properly points out that our criminal discovery rules contain no provision for a lineup prior trial at the defendant's request. R. 3:13-3(a), relating to discovery by the defendant, establishes a defendant's right to inspect various books, documents, reports, grand jury testimony, and names and addresses of witnesses. R. 3:13-1(b) does provide for pretrial hearings "to resolve issues relating to ... pretrial identifications of defendant" which "may be held immediately prior to jury selection...." However, this rule was adopted to avoid interrupting the flow of evidence being heard by the jury for presentation of identification matters to the court. See United States v. Wade, 388 U.S. 218, 242-243, 87 S.Ct. 1926, 1940, 18 L.Ed.2d 1149, 1166 (1967). Prior to adoption of the rule when a defendant objected to an in-court identification on the ground that a pretrial identification by the same witness was unduly suggestive, the court was compelled to hear testimony in the absence of the jury concerning the circumstances surrounding the pretrial identification and ultimately rule on its admissibility. The technique provided by R. 3:13-1(b) eliminates this interruption of the trial from the jury's point of view and expedites the conduct of the trial. Moreover, the trial court's determination constitutes an interlocutory decision which may be appealable by the State. R. 2:3-1; Pressler, Current N.J. Court Rules, Comment R. 3:13(1) (1981).
The Attorney General has suggested that under R. 3:13-1(b) a court may order a lineup as part of the courtroom identification *223 hearing and, where a pretrial identification is sufficiently questionable, relax the rule pursuant to R. 1:1-2, and hold such a hearing any time prior to trial. Although this procedure has much to commend itself, it is not within the contemplation of the rule. Application of the rule in the manner suggested by the Attorney General would be inconsistent with the rule's purpose, namely, to avoid holding the Wade hearing during trial, but rather to have it immediately prior to jury selection. Furthermore this proposed procedure would require the court to oversee the lineup, thereby consuming additional judicial resources.
The State contends that by granting the defendant's motion the trial court would be interfering with the prosecutor's preparation of the State's case, thereby violating the doctrine of separation of powers between the judicial and executive branches of government. This contention is misplaced. The Supreme Court has been charged with the constitutional obligation to make rules governing the practice and procedure in the courts, N.J.Const. (1947), Art. VI, § II, par. 3, essential components of which are the trial process and the presentation of evidence. A necessary incident includes administration of the action before trial to further the underlying purpose of the trial, exposure of all relevant and material facts to the fact finder. Though the results of the identification lineup may affect the prosecutor's decisions with respect to whether and how the trial should be conducted, the separation of powers doctrine does not "prevent the Court from adopting rules which have some effect on matters which involve executive and legislative functions." State v. Leonardis, 73 N.J. 360, 372 (1977).
The State further contends that granting defendant's request would unduly interfere with the State's investigation, preparation, evaluation and presentation of its case. It is true that some burden would be imposed on the prosecutor in arranging for the lineup. Almost invariably responses to discovery demands entail some obligation on the part of the recipient, but that in and of itself should not act as a bar when the discovery is *224 warranted. The prosecutor, who would undoubtedly want to be present during any lineup, is probably in a far better position to arrange for it than the defendant.
The State also argues that a pretrial lineup is inconsistent with discovery because the lineup would result in the creation of new evidence rather than the disclosure of existing evidence. As a discovery tool the same objection could be lodged against the prosecutor. The discovery process includes ascertainment of relevant facts, which may be produced at the trial, even though not in existence at the time of the episode in question. Thus for example, handwriting exemplars, State v. Carr, 124 N.J. Super. 114 (Law Div. 1973), voice prints, State v. King, 44 N.J. 346, 356-358 (1965), blood tests State v. Blair, 45 N.J. 43 (1965), and physical examinations, see State v. King, 44 N.J. 346, 357 (1965), are recognized investigatory methods which may lead to establishment of relevant material evidence though not in being when the event occurred.
We are satisfied that we possess the inherent judicial authority to order pretrial lineups as part of the discovery practice in criminal proceedings. Though no procedural rule provides for this discovery, it is appropriate for us to consider the propriety of an order providing for such discovery. We turn next to that problem.

II.
Whether discovery should be expanded involves exercising judicial discretion or, put another way, balancing the beneficial effects of discovery against its disadvantages. We have previously alluded to the potential importance of identification information to the defendant. Justice Brennan in United States v. Wade, 288 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), noted that "[t]he vagaries of eyewitness identification are well known; the annals of criminal law are rife with instances of mistaken identification." Id. at 228, 87 S.Ct. at 1932, 18 L.Ed.2d at 1158 (footnote omitted). Thus a lineup could provide added assurance *225 of correct recognition. While a defendant may cross-examine a witness at trial, the advantage of having derived some additional information at a pretrial lineup, particularly if the witness has not been able to identify the defendant, is obvious.
However, there are several adverse factors. The victim and witnesses who would have to appear would be subjected to the burden of making themselves available, expending the time, and experiencing emotional upset. This could tend to discourage cooperation by many who are already reluctant to become involved in criminal proceedings. In an analogous matter we have previously refused to provide for depositions before criminal trials because of the undue harassment of victims of crimes and other witnesses. See "Report of Supreme Court's Special Committee on Discovery in Criminal Cases," 90 N.J.L.J. 209, 214 (1967). Furthermore, there is the practical problem of producing the victim and other witnesses. If they will not appear voluntarily, a court order would have to be obtained to compel their attendance. Finally, if defendants were automatically entitled to pretrial lineups, the number might be substantial since they might be routinely and indiscriminately sought by defendants. The cost and time consumption which in the aggregate might be imposed on the prosecution and the judicial system may not justify these requests.
On balance, we are satisfied that under some circumstances a defendant may be entitled to a lineup. This position accords with that adopted by most jurisdictions which have considered the issue. United States v. Caldwell, 465 F.2d 669, 671 (D.C. Cir.1972); United States v. MacDonald, 441 F.2d 259 (9 Cir.1971), cert. den. 404 U.S. 840, 92 S.Ct. 133, 30 L.Ed.2d 74 (1971); United States v. Ravich, 421 F.2d 1196 (2 Cir.1970), cert. den. 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); Evans v. Superior Court of Contra Costa County, 11 Cal.3d 617, 522 P.2d 681, 114 Cal. Rptr. 121 (Sup.Ct. 1974); State v. Boettcher, 338 So.2d 1356 (La.Sup.Ct. 1976); Commonwealth v. Johnson, 2 Mass. App. Ct. 877, 316 N.E.2d 763 (1974); People v. Maire, 42 Mich. App. 32, 40, 201 N.W.2d 318, 323-324 (1972); Commonwealth v. *226 Sexton, 485 Pa. 17, 400 A.2d 1289 (1979). Our research has disclosed only one case that held, without any rationale, that a trial court could not order the prosecution to conduct a lineup upon the motion of the defendant. Daugherty v. State, 478 S.W.2d 921 (Crim.App.Tenn. 1972).
The only reported case in which our courts have considered a defendant's motion for a pretrial lineup was in State v. Walls, 138 N.J. Super. 445 (App.Div. 1976). There the Appellate Division upheld the denial of the defendant's motion stating that as a matter of policy such discovery should not be permitted because these procedures would be costly and time consuming and might result in undue harassment of victims and other witnesses. The court also concluded that the defendant had not shown a reasonable likelihood of mistaken identification. Though, as indicated below, circumstances may warrant refusal to order a pretrial lineup, we do not agree with the Appellate Division that such lineups should be automatically foreclosed.
In deciding whether to grant a defendant's motion for a pretrial lineup, the trial court must consider and determine several matters. Though the circumstances will probably vary from case to case, certain guidelines should be followed. First, identification must be a substantial material issue. The absence of materiality may be self-evident from the nature and circumstances of the alleged crime, identification not truly being in issue. The trial court should also consider the degree of doubt concerning the identification. Realistically, it may be so insubstantial that a lineup is not justifiable. Second, there must be a reasonable likelihood that a lineup would be of some probative value.[1] In this respect the length of time between the crime *227 and the arrest and the possibility that the defendant may have altered his appearance should be considered. It is common knowledge that memories often fade with the passage of time, and a shorter interval between the event and the lineup may increase the likelihood of accuracy. Third, the defendant's motion should be made as soon after arrest or arraignment as practicable. In the absence of good cause, a trial court would be justified in denying such a request on timeliness grounds alone.
The trial court should also consider other factors in determining whether, in the exercise of its sound discretion, the motion should be granted. Appropriate items in this mix are the burden imposed on the prosecution, the extent of inconvenience to prosecution witnesses, the inability or difficulty in having the witnesses appear, and the likelihood of subjecting witnesses to intimidation, unnecessary annoyance, harassment or embarrassment. This is not intended to be an all-inclusive list of the *228 factors that the trial court may consider in evaluating the merits of the request. The reasonableness of defendant's request should be determined in the light of all the circumstances, it being understood that the use of discovery as a guise for dilatory tactics is not to be countenanced.
The defendant's motion may be heard and decided in a summary manner, based on affidavits, police reports, and other supporting documents. We do not contemplate that a plenary hearing will be held. It is the defendant's burden to show by a fair preponderance of the evidence that the first three guidelines are satisfied. However, insofar as other factors are concerned, it will be the State's burden to come forward with facts justifying its position in those respects, although the ultimate burden will remain on the defendant.
We now turn to an application of the above principles to the facts of the cases before us.

IV.

State v. Walls
Walls was indicted for kidnapping, rape, contributing to the delinquency of a minor, threatening a life, theft, and possession of a dangerous weapon, a knife. The episode in question occurred on July 21, 1979, and the defendant was arrested on that day. His notice of motion to compel the State to conduct a lineup was made on April 28, 1980. The trial court heard the motion on June 18, 1980.
The trial court had before it the victim's statement, the grand jury testimony, defendant's affidavit and an undated sworn statement of one Billy McMillian. As might be expected, divergent tales are told.
The victim, a 17 year old female high school senior, had been drinking some wine during the evening with a girlfriend in Garden City, Long Island. While the victim was walking home alone, defendant, who was driving by, stopped and offered her a ride. She accepted.
*229 In her grand jury testimony, the victim stated that defendant refused to let her out of the car and that she was frightened. She testified that she snorted some cocaine and was driven to the Mayflower Hotel in Jersey City where defendant threatened her with a knife and raped her. She passed out and when she awoke, he had gone. Her pocketbook and clothes were missing. She then wrapped herself in a sheet and went down to the hotel lobby where the police were called.
In a written statement given to the police she also asserted that they had stopped in the vicinity of 42nd Street in New York City where they snorted some cocaine. She next remembers going into a room at the Mayflower Hotel. Defendant was drinking vodka. Defendant insisted she take off her pants and forced her onto the bed. She started to cry. He permitted her to go to the bathroom where she slammed the door, but defendant broke the door down, pulled her out and pushed a pillow over her face. She tried to grab the knife. The defendant started to choke her and he raped her two or three times. She fell asleep and upon awakening he was gone as well as her clothes. She wrapped a sheet around herself and had the hotel manager call the police. The police took her to the hospital. That night, at about 7:30 p.m., she identified the defendant in the x-ray emergency room of the hospital.
The defendant's affidavit, dated April 28, 1980, asserts he did not commit any criminal acts on the date alleged, and that the hospital identification occurred in a poorly lit room where the police officer asked her, "That's him, isn't it?" He also stated that the victim had not appeared on three different occasions when probable cause hearings were scheduled before the Jersey City Municipal Court.
The undated affidavit of a Billy McMillian, which had been prepared in the office of defendant's counsel, recited that McMillian, who lived in Hempstead, Long Island, had been driving his automobile in Garden City when he saw the victim thumbing for a ride. He stopped the car. Without a word she *230 entered and said she was going to Manhattan. She was "high" and became affectionate. He stopped on 42nd Street near Eighth Avenue in Manhattan and got some reefers. She started to smoke one. When she agreed to have sexual intercourse, they went to the Mayflower Hotel in Jersey City where they consumed some vodka and engaged in sexual relations. She fell asleep. McMillian left and rejoined the defendant Walls in Long Island. They drove back to Jersey City to the hotel. When Walls and he went into the hotel and up to the room, the police were there and ran after the defendant while McMillian walked away in another direction.
Officer Smigelski of the Jersey City police department testified before the grand jury that at about 3:30 p.m. he responded to a telephone call from the Mayflower Hotel where he found the victim in the lobby wrapped in a sheet. She was somewhat confused and disoriented. The officer left, but other police officers arrived and stationed themselves in the hotel room. The defendant started to enter the room. When the police attempted to arrest him, he turned and ran.
At the oral argument the prosecutor asserted that the defendant had broken his ankle when he jumped down a fire escape in the Mayflower Hotel and was taken to the emergency room at the hospital. The prosecutor also claimed that the defendant's fingerprints were not only found on the bottle of vodka but also on a wall inside the room.
In deciding to grant defendant's motion for a lineup, the trial court reasoned that there was a showing of a reasonable likelihood of a mistaken identification because the victim had not been in control of her faculties due to alcohol and drugs and because McMillian's statement asserted he was the person who had had sexual relations with the victim. The trial court's oral opinion gives no indication as to whether it applied the criteria which we have outlined above. Accordingly we are remanding the matter for reconsideration on the record already made and as may appropriately be supplemented by the parties. In this *231 respect we note that statements by counsel, unless constituting admissions, are not substitutes for factual support. Conspicuously missing are the hospital records, police report, and fingerprint information.
One factor which the trial court should consider is the time lapse between defendant's arrest on July 21, 1979 and his notice of motion in April 1980. Has the defendant shown good cause for that delay? When was the McMillian statement obtained? What were the circumstances under which it was given? If the statement was not given until April or thereabouts, did that justify the delay in the motion? In any event will the time lag eliminate or substantially diminish the significance of a failure of identification?
Another element to be considered is the prosecutor's ability to produce the victim and McMillian, both New York residents, for the pretrial lineup. As the trial court observed, the presence of both McMillian and defendant in a lineup, if one is held, would seem to be appropriate. However, it may not be possible to secure the attendance of both McMillian and the victim.[2]
The statements are not clear regarding whether defendant and McMillian both returned to the room in the hotel and whether defendant entered the room. Nor is there any explanation by the police of what occurred when defendant came to the hotel. Was McMillian or any other person seen by the police? What explanation does defendant have for running away or for the existence, if true, of his fingerprints inside the room? The trial court should also consider the circumstances under which the victim identified the defendant in the hospital. Defendant asserted that it was a "poorly lighted room," but no other detail is given, such as what light existed and what was the position of the defendant in relation to that light.
*232 If the trial court finds that defendant has shown that eyewitness identification is a substantial material issue, that there is a reasonable likelihood that a lineup would be of some probative value to defendant, and that there was just cause for defendant's delay in making the motion, then, after considering all other pertinent factors, it should exercise its sound discretion in determining whether the pretrial lineup is warranted. The trial court should articulate its factual findings and legal conclusions.
Reversed and remanded.

V.

State In The Interest of W.C.
During argument on a motion for release of the defendant pending a probable cause hearing before the Hudson County Juvenile and Domestic Relations Court with respect to a complaint against a juvenile, W.C., defendant's attorney orally requested a pretrial lineup. Without any proofs having been offered or considered, the trial court ordered that a lineup be held. This hearing was held in August 1980. The State's motion for reconsideration was denied.
The record is sparse indeed. All that appears is a complaint in the Juvenile and Domestic Relations Court alleging that on May 30, 1980 at 8:12 p.m., the juvenile, W.C., struck a 15 year old boy, Thomas Hennessey, over the head with a baseball bat and threw him over a cliff, causing a fractured skull and head lacerations requiring 28 sutures. The oral argument of counsel on the motion adds little except that W.C. had been inducted into the United States military service on May 13, 1980 and had left the State in June 1980. He was extradited and returned to New Jersey in August 1980.
According to the statement of facts in the briefs of counsel, on May 30, 1980, shortly after 8 p.m., Thomas Hennessey and a group of his friends were walking along Paterson Plank Road. A car stopped and a group of young men, including W.C., *233 alighted. W.C. had a club. He chased one of Hennessey's companions, and then turned on Hennessey, beating him over the head with the club. W.C. allegedly attacked another boy and then struck Hennessey again with the club. W.C. then, with the assistance of others threw Hennessey over a wall, dragged him down a cliff, and continued to beat him with the club until someone intervened and took Hennessey to St. Mary's Hospital in Hoboken. Twenty-eight sutures were required to close the scalp lacerations. Hennessey remained in the hospital for one week.
At oral argument before the Juvenile and Domestic Relations Court for reconsideration and before us the prosecutor stated that a witness who had known W.C. for more than five years would be able to identify him so that there was no likelihood of misidentification.
At the argument on the motion for reconsideration the juvenile's counsel stated that defendant was not present when Hennessey was beaten, but was painting a hallway in a nearby apartment of the Hoboken Housing Authority. It is contended that W.C. arrived at the scene when Hennessey was being taken away for medical attention.
The trial court did not have an appropriate record before it to make the judgment to determine whether a lineup was warranted. No party claims that the pretrial lineup principles should differ because this is a juvenile proceeding involving acts which would constitute crimes if committed by an adult. Accordingly, we are remanding the matter to the trial court to afford the juvenile an opportunity to make an application forthwith for a pretrial identification lineup supported by affidavits or other proofs. Insofar as the time is concerned, the trial court should consider the application as if it had been made in August 1980 and otherwise apply the principles stated herein.
Reversed and remanded.
*234 For reversal and remandment  Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK  7.
For affirmance  None.
NOTES
[1] The American Law Institute's Proposed Official Draft of A Model Code of Pre-Arraignment Procedure (April 15, 1975) contains a similar proposal. It suggests that "[a] person arrested for or charged with an offense ... may request the judicial official to order an identification procedure involving such person. If it appears that the results of the identification procedure will be of material aid in determining whether the person committed the offense, the judicial official shall order a law enforcement officer to conduct the identification procedure...." § 170.2(8).

The Uniform Rules of Criminal Procedure promulgated by the National Conference of Commissioners on Uniform State Laws in 1974 provides a similar procedure:
Rule 437.
(a) Authority. Upon motion of an accused person who has been arrested, cited, or charged in an information [or indictment], and after notice to the person who is to be the subject of the order and opportunity for him to be heard, the court by order may direct any person to participate in one or more of the procedures specified in Rule 434(c)(1) through (8)
[Rule 434(C)(1) allows the trial court to order the defendant to submit to a lineup] if it finds probable cause to believe that:
(1) The offense for which the accused person was arrested, cited, or charged was committed by one or more of several persons comprising a narrow focal group that includes the subject person;
(2) The evidence sought could contribute to an adequate defense of the accused person; and
(3) The evidence sought cannot practicably be obtained from other sources.
The court may direct any person, including the prosecuting attorney, to provide the authorized procedure.
[2] It is not clear whether the prosecution could compel their attendance under the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings, N.J.S.A. 2A:81-18 et seq. The trial court, if it decides to order a lineup, might condition its order on defendant's producing McMillian and perhaps on limiting the lineup to the defendant and McMillian.