234 N.J. Super. 486 (1989)
560 A.2d 1331
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT N. TULL, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided January 10, 1989.
*488 John S. Sitzler for defendant (Mathews, Sitzler, Weishoff & Sitzler, attorneys).
Janine L. Long, for the State, appearing pursuant to R. 1:21-3(b) (Stephen G. Raymond, Prosecutor).
HAINES, A.J.S.C.
The defendant, Robert Tull, was charged with driving while under the influence of alcohol ("DWI"). Through counsel, he served a written request for discovery upon the Prosecutor. A copy of the request is annexed to this opinion. Some of the *489 requested information was provided to the defendant by the Prosecutor, much was not. At trial, in the Municipal Court, the defendant moved for dismissal of the complaint by reason of the discovery omissions. The Prosecutor, opposing the motion, argued that he was not required to respond to the discovery demand because it was too broad, cast in the form of interrogatories not permitted under our rules governing criminal practice, and because much of the material was not in his "possession, custody, or control." He did not move for a protective order. The dismissal motion was denied. This interlocutory appeal followed.

A. The Discovery Rules

R. 7:4-2(g) governs discovery in the municipal courts and provides:
Depositions and discovery in any case in which the defendant may be subject to imprisonment or other consequence of magnitude if convicted shall be as provided by R. 3:13-2 and R. 3:13-3 provided that the municipality in which the case is to be tried has a municipal prosecutor. In all other cases the court may order depositions to be taken and discovery made in criminal actions as provided by R. 3:13-2 and R. 3:13-3.
R. 3:13-2 deals with depositions and is not involved here. R. 3:13-3 is applicable and provides, with respect to discovery by the defendant, the following:
Discovery and Inspection
(a) Discovery by the Defendant. Upon written request by the defendant, the prosecuting attorney shall permit defendant to inspect and copy or photograph any relevant
(1) books, tangible objects, papers or documents obtained from or belonging to him;
(2) records of statements or confessions, signed or unsigned, by the defendant or copies thereof, and a summary of any admissions or declarations against penal interest made by the defendant that are known to the prosecution but not recorded;
(3) grand jury proceedings recorded pursuant to R. 3:6-6;
(4) results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the matter or copies thereof, which are within the possession, custody or control of the prosecuting attorney;
(5) reports or records of prior convictions of the defendant;

*490 (6) books, papers, documents, or copies thereof, or tangible objects, buildings or places which are within the possession, custody or control of the State;
(7) names and addresses of any persons whom the prosecuting attorney knows to have relevant evidence or information including a designation by the prosecuting attorney as to which of those persons he may call as witnesses;
(8) record of statements, signed or unsigned, by such persons or by co-defendants which are within the possession, custody or control of the prosecuting attorney and any relevant record of prior conviction of such persons;
(9) police reports which are within the possession, custody, or control of the prosecuting attorney;
(10) warrants, which have been completely executed, and the papers accompanying them including the affidavits, transcript or summary of any oral testimony, return and inventory;
(11) names and addresses of each person whom the prosecuting attorney expects to call to trial as an expert witness, his qualifications, the subject matter on which the expert is expected to testify, a copy of the report, if any, of such expert witness, or if no report is prepared, a statement of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion. If this information is requested and not furnished, the expert witness may, upon application by the defendant, be barred from testifying at trial.
The rules do not provide for the use of interrogatories in criminal matters. Tull's discovery demand is, in form, a set of interrogatories and, according to the Prosecutor, therefore does not compel responses. In making this objection the Prosecutor ignores the alternative language of the demand. It requests the State to "furnish each [item] to me or permit inspection or copying." It also solicits the delivery of tangible evidence to defense counsel's office "or a date, time and location which is convenient for me to examine same." These alternative demands satisfy the literal requirements of the rule. Nevertheless, an exploration of the Prosecutor's "interrogatory" argument has value.
Her argument addresses the discovery rules too technically. True, R. 3:13-3 requires only that "the prosecuting attorney shall permit defendant to inspect and copy or photograph" requested relevant information. However, the information to be inspected, copied or photographed includes "a summary of any admissions or declarations against penal interest made by the defendant that are known to the prosecution but *491 not recorded; ... names and addresses of any persons whom the prosecuting attorney knows to have relevant evidence or information including a designation by the prosecuting attorney as to which of those persons he may call as witnesses; ... names and addresses of each person whom the prosecuting attorney expects to call to trial as an expert witness ... [and] if no [expert] report is prepared, a statement of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion...." The information so identified will not be available in most cases for inspection and copying unless and until the prosecutor commits it to writing. In doing so, the State is answering the so-called interrogatories. The rule, therefore, should not be read so strictly that a discovery request couched in the form of interrogatories may be ignored by the prosecutor. That would elevate form over substance.
The prosecutor is not without recourse. R. 3:13-3(d) provides for protective orders, none being sought here. In fact, in this case, the prosecutor responded to a number of the "interrogatories" and cannot now be heard to say that the discovery request was incomprehensible. It is also said by defense counsel that the form of his discovery request is one which accommodates local practice. Proof of that assertion, however, is not in the record and, even if it were, the provisions of the rules cannot be changed by local practice. A better and safer practice for defendants, in any event, would be to make an inspection and copying demand upon the prosecutor while offering, in the alternative, to accept copies of documents and written representations. Realistically, prosecutors may prefer the alternative; arrangements for inspection, copying and photographing documents are not only cumbersome, but probably impose unnecessary burdens upon prosecutors' staffs.
This liberal interpretation of our discovery rules is based upon more than a logical analysis. The philosophy underlying the rules is that "the interests of truth and justice are best served by broad mutual discovery before trial." State v. Cook, *492 43 N.J. 560, 563 (1965). Furthermore, it is the duty of the State to disclose to a criminal defendant known favorable evidence material to guilt or punishment. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Thus, it is the "settled view," as our Supreme Court has said, "that the prosecution must seek only a just result, and that the duty is the State's to produce or offer to the defendant whatever it has that could help him." State v. Tate, 47 N.J. 352, 356 (1966) (the case which prompted the adoption of our present criminal discovery rules).
The disclosure rule is broad. In Brady, the Court said:
We now hold that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
....
... Society wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly. [373 U.S. at 87, 83 S.Ct. at 1194]
State v. Carter, 91 N.J. 86 (1982), explored the question of materiality and said:
Non-disclosure of evidence favorable to the accused violates the constitutional right of due process only "where the evidence is material to guilt or punishment." In making the often difficult determination of what is "material" we look to the factual circumstances of the particular case. Where the prosecution has knowingly used perjured testimony, the undisclosed information is material if "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Where the defendant has made a specific request for information and the prosecution has failed to reveal the requested information, the standard of materiality is whether "the suppressed evidence might have affected the outcome of the trial." Finally, when no request is made by the defendant or only a general request is made, information not revealed by the prosecutor will be considered material only if "the omitted evidence creates a reasonable doubt that did not otherwise exist...." [at 112; citations omitted]
New Jersey courts have not decided whether the Brady rule applies to municipal court DWI prosecutions. The Brady rule, however, is nothing more than a realistic application of the long-standing requirement that "[t]he primary duty of the state *493 in criminal prosecutions is not to seek convictions; it is to see that justice is done and truth is revealed." State v. Vigliano, 50 N.J. 51, 60 (1967). Fairness on the part of the State requires its disclosure of known favorable evidence material to guilt or punishment. It is a requirement that must apply in municipal court DWI cases as it does in Superior Court criminal proceedings. The statutory DWI sanctions are severe; defendants face imprisonment, loss of drivers' licenses for substantial periods of time and significant financial penalties. N.J.S.A. 39:4-50. A refusal to apply Brady to these cases would deny the integrity of our court system.
The discovery rules support this conclusion.
R. 7:4-2(g) (repeated for convenience) provides:
Depositions and Discovery. Depositions and discovery in any case in which the defendant may be subject to imprisonment or other consequence of magnitude if convicted shall be as provided by R. 3:13-2 and R. 3:13-3 provided that the municipality in which the case is to be tried has a municipal prosecutor. In all other cases the court may order depositions to be taken and discovery made in criminal actions as provided by R. 3:13-2 and R. 3:13-3.
This rule, as Tate suggests in discussing the possible need for discovery, rests upon the proposition that the State, when prosecuting a criminal charge, must act fairly. R. 7:4-2(g) and R. 3:13-3 must be read broadly with that premise in mind.
State v. Roth, 154 N.J. Super. 363 (App.Div. 1977), held that R. 3:13-3 did not apply to DWI prosecutions, thereby provoking the amendment to R. 7:4-2(g) which reversed that conclusion. In Roth the prosecutor conceded the obligation of the State to comply with the Brady rule in a DWI prosecution. The Court noted:
The State also concedes that it has the obligation to provide the defense with any and all relevant statements of State's witnesses at trial prior to their taking the witness stand, along with any information of an exculpatory nature. [at 367]
The comment is revealing.

B. The Reach of the Rules

DWI cases clearly meet the test of R. 7:4-2(g): that "the defendant may be subject to imprisonment or other consequence *494 of magnitude if convicted." State v. Utsch, 184 N.J. Super. 575, 579 (App.Div. 1982). R. 3:13-3 therefore permits discovery in DWI cases.
The demand for discovery must be served upon the prosecutor who has the responsibility to answer. State v. Polasky, 216 N.J. Super. 549 (Law Div. 1986); State v. Malsbury, 186 N.J. Super. 91 (Law Div. 1982), disapproved on other grounds, 198 N.J. Super. 474, 483 (App.Div. 1985), disapproval modified, 101 N.J. 27, 32 (1985). The demand was so served in the present case. It required a generous response dictated by the rule of fairness.
R. 3:13-3 refers in pertinent part to information which is "within the possession, custody or control of the State." The State contends that it has no obligation to furnish certain requested materials in the present case because they are not in its "possession." The argument, frequently raised in these cases, is largely resolved by State v. Murphy, 36 N.J. 172 (1961).
Murphy dealt with an earlier discovery rule which permitted inspection and copying of certain books, tangible objects, papers and documents. It did not refer to materials in the "possession, custody or control of the prosecuting attorney" as R. 3:13-3 does in certain instances. Murphy nevertheless adopted a broad discovery requirement. The Court said:
We should note that both Federal Rule 16 and Uniform Rule 28 provide for "a showing that the items sought may be material to the preparation of his defense." Our failure to adopt that phrase does not mean that we intended discovery to be limited to a preview of what the State will offer at the trial. We merely adopted another test without thereby modifying the purposes to be furthered by discovery. Specifically, we provided for an absolute right to discovery of everything (other than his statement) taken from a defendant, and, as to all else, we provided for a decision upon the basis of the requirements of justice, a concept which is pervasive and includes the needs of an accused to prepare for the presentation of his defense. [at 182; citation omitted]
....
As we have already said, the fact that the discovery rule speaks of orders upon the prosecutor does not mean that discovery may be defeated because the prosecutor does not possess the document or the authority to order its production. *495 It may well be that the statement of one later accused will have been taken by some other of the many officers and agencies of the State concerned with the enforcement or the administration of the laws. So, for example, it may have been taken by a local police officer or a member of the Attorney General's staff; or in a proceeding before a professional board or some other agency in the executive department. The right of an accused to pretrial inspection can hardly depend upon the identity of the agency of the State which obtained the statement relating to the crime charged in the indictment. In short, although the State may, as it necessarily must, diffuse its total power among many offices and agencies, yet when the State brings its authority to bear upon one accused of crime, all of its agents must respond to satisfy the State's obligation to the accused. [at 184]
In State v. Lewis, 137 N.J. Super. 167 (Law Div. 1975), the Court dealt with a motion to dismiss an indictment because certain material evidence had been lost by a court which tried a prior related case. The State was held responsible; the indictment dismissed. The Court said:
In a criminal proceeding the State of New Jersey is the prosecutorial party; it cannot atomize itself into hundreds of totally independent agencies. Responsibility in such matters must be interrelated. Hence, regardless of which agency within the State has been negligent  be it the prosecutor, the surrogate or the court  the State, not defendant, must suffer the consequences. [at 172]
It is clear from these cases that a prosecutor may not refuse a discovery demand simply because the information or materials sought are not in the municipal offices or within easy reach. On the contrary, the requested information and materials, if relevant and within the "possession, custody or control of the State," wherever situated, must be provided to the defendant.
It is helpful to compare the Federal discovery rules. Federal Rule of Criminal Procedure 16(a)(1)(C) provides:
Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.
Sub-paragraph (D) provides:
Upon request of a defendant the government shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to *496 the attorney for the government, and which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.
New Jersey has not adopted any "due diligence" requirement. It is obvious, however, that a prosecutor is expected to act reasonably when responding to a discovery demand. The State cannot refuse production on the ground that the requested information is not known by the prosecutor to be in existence when its existence is common knowledge or when the knowledge could be obtained by reasonable inquiry.
R. 3:13-3 does not, in express language, require the information sought by the defense to be material. Nevertheless, the rule limits discovery to "relevant" information. To be "relevant," as discussed below, the information must be material. Materiality is also a factor when the Brady rule applies. Thus, in Carter, 91 N.J. at 86 (quoted above), the Court, addressing the materiality issue, applied different standards to information which was demanded and to exculplatory information which was not demanded.
Here, a broad request was made and no protective order sought. The State must therefore provide the information unless it is not "relevant" or is out of the reach of the prosecutor. The question of relevance requires discussion first.

C. Relevance

R. 3:13-3(a) provides: "Upon written request by the defendant, the prosecuting attorney shall permit defendant to inspect and copy or photograph any relevant ... books ... records ... reports ..." and various other items of information. [emphasis supplied] The civil rule, R. 4:10-2(a) is broader, permitting discovery of "... any matter not privileged, which is relevant to the subject matter involved in the pending action...." The information sought "need not be admissible itself, so long as it is relevant and can reasonably lead to discovery of admissible evidence." Rosegay v. Canter, 187 N.J. Super. 652, 654 (Law Div. 1982). These rules, both criminal and civil, permit discovery before trial, discovery which was unavailable at common *497 law. See State v. Cook, 43 N.J. 560, 562 (1965), in which the Court reviews the history of discovery rules in criminal cases. The adoption and broadening of the rules reflect the efforts of the courts to insure fairness and enhance the search for truth in all litigation. The Supreme Court's discovery philosophy was captured in the language of Chief Justice Weintraub in State v. Johnson, 28 N.J. 133 (1958):
We start with the premise that truth is best revealed by a decent opportunity to prepare in advance of trial. We have embraced that tenet with respect to civil litigation, and absent overriding considerations, it should be as valid in criminal matters. It is of no moment that pretrial inspection is not constitutionally assured. We are not limited to constitutional minima; rather we strive for practices which will best promote the quest for truth. [at 136-137; citation omitted]
This is the philosophy which controls court responses to discovery requests and objections.
In permitting discovery in criminal cases, courts are not limited to the strict language of R. 3:13-3; fairness to the defendant, for example, may require the disclosure of other information. State v. Satkin, 127 N.J. Super. 306, 310 (App. Div. 1974). "[O]mission of a specific discovery rule did not at all impair the inherent powers of the court to order discovery when justice so required." Cook, 43 N.J. at 563. A liberal approach to discovery is emphasized in numerous opinions of the New Jersey courts. In State in Interest of W.C., 85 N.J. 218 (1981), the Court said: "This Court's policy concerning pretrial discovery has been to encourage the presentation of all relevant material to the jury as an aid in the establishment of truth through the judicial process. The pretrial discovery process promotes the quest for truth." Id. at 221. In State v. Polito, 146 N.J. Super. 552, 556 (App.Div. 1977), the Court said that "... a defendant's right to discovery is not dependent upon an appraisal of the beneficial value of the material sought to be discovered." In State v. Montague, 55 N.J. 387, 401 (1970), the Court described our pretrial discovery rules as "significantly geared towards broader mutual discovery within constitutional limits." In State v. Laganella, 144 N.J. Super. 268, 282 (App. Div. 1976), app. dism., 74 N.J. 256 (1976), the Court in dicta, said *498 that the suppression of evidence "which is reasonably calculated to lead to evidence impugning the credibility of the State's witness" is a violation of a defendant's right to due process.
Notwithstanding the liberality of our court's approach to discovery in criminal matters, it is clear that the discovery rules are not to be read as broadly as those applicable in civil cases. The necessity for some limitation was underlined by the Supreme Court in State in Interest of W.C.:
The adversary system, modified in criminal matters as it is by the prosecutor's role to insure "that justice shall be done", is only a means to attain that goal. Uninhibited discovery in criminal, unlike civil, proceedings cannot exist, primarily because defendant's constitutional privilege against self-incrimination limits reciprocal discovery in criminal matters. As a result our discovery rules in criminal proceedings have had a different history and are more limited in scope than in civil matters. [85 N.J. at 221-222; citations omitted]
In State v. R.W., 104 N.J. 14 (1986), the Court said:
Our criminal justice system recognizes fully a defendant's right to prepare a defense and have complete discovery. However, allowing a defendant to forage for evidence without a reasonable basis is not an ingredient of either due process or fundamental fairness in the administration of the criminal laws. [at 28]
The problem is to define the limitation which must be applied to discovery demands in criminal cases. To say that a demand does or does not serve the interests of truth or fairness or justice is not very helpful although those words reflect guiding principles. It is certain that fishing expeditions permitted in civil proceedings are not be be permitted in criminal proceedings. Contra, State v. Boutsikaris, 69 N.J. Super. 601 (Law Div. 1961).[1] Some insight may be gained from an examination of criminal cases dealing with discovery requests. Those listed below illustrate the permissible.
(1) Cook

Defendant is entitled to inspect the State's psychiatric reports. "... there would now appear to be little question that, absent a showing by the State *499 that its prosecution would be improperly hampered, a defendant is entitled to pretrial inspection of the State's objective documents such as autopsy reports, hospital reports and other scientific and laboratory reports, including chemical analyses, blood tests, etc. [43 N.J. at 566-567] [Obviously applicable to discovery demands concerning breathalyzer testing equipment and procedures.]
(2) State in Interest of W.C.

Courts have inherent power to order a pretrial lineup.
(3) Montague

The State is entitled to a statement made by a defense witness.
(4) Polito

Defendant had right to inspect automobile parts involved in criminal charge.
(5) Satkin

Court ordered discovery of (a) negotiations by State with witnesses designed to secure their cooperation and (b) information as to the amount of money paid to such witnesses.
(6) Laganella

State had duty to disclose promises of immunity to witnesses.
(7) State v. Harrison, 118 N.J. Super. 299
(Law Div. 1972), aff'd, 119 N.J. Super. 1 (App.Div. 1972).
Defendant had right to copy reports or statements of all state witnesses including police.
(8) State v. Ramos, 169 N.J. Super. 573 (Law Div. 1979).
State must disclose charges made against a State witness who was a juvenile.
The courts in these cases, while not discussing any specific discovery limitation, required disclosure of information which would constitute relevant evidence if offered at trial by the State or the defense, whether to prove a fact or to challenge credibility.
"Relevant evidence" is "evidence having any tendency in reason to prove any material fact." Evid. R. 1(2). It is sensible to read the word "relevant" as used in R. 3:13-3 to mean "relevant evidence" as defined in Evid. R. 1(2). Both rules deal with information which may be offered at trial. This reading limits discovery demands in criminal cases to information "having any tendency in reason to prove any material fact." Such demands must be honored only if the information (1) concerns an issue involved in the prosecution, and (2) tends, reasonably, to prove a fact material to such an issue. Unlike discovery in civil cases, information cannot be demanded which *500 merely leads to other information which is "relevant." However, the fact that information sought may not be admissible at trial as evidence does not bar its discovery. Admissibility cannot always be determined in advance of trial.
These conclusions bring us to the discovery requests made by the within defendant. Do they satisfy the rule?

D. The Discovery Request

The Prosecutor has not moved for a protective order as permitted by R. 3:13-3(d) and has not made any convincing arguments concerning relevance or difficulty in obtaining the information demanded. Most of the requests contained in the discovery letter refer to material, obtainable, "relevant" information, thus satisfying the requirements of R. 3:13-3. Exceptions are the following (numbers refer to the numbers in the discovery letter):
6. Copy of and specific time of any complaint to police initiating the police response to the defendant's location and preservation for defense use at trial of original phone tapes.
This request addresses information which is not relevant under State v. Tischio, 107 N.J. 504, 522 (1987). Tischio requires only that the breathalyzer test be "administered within a reasonable period of time after the defendant is stopped for drunk driving...." The time of the "complaint" is, therefore, irrelevant and immaterial.
10. Copies of all records of your municipality's receipt of and/or application for drinking/driving enforcement funds.
This information is not relevant. It is too remote to be used to challenge credibility. Every municipality may be eligible for these funds.
15. All relevant written or recorded verbatim statements, both signed and unsigned, of any witnesses known to the State. If the State has no such written or recorded statements, then defendant requests a summary of the testimony each witness is expected to give at the trial.
*501 The request contained in the second sentence is improper. It is not authorized by the rule.
16. All reports of records of prior convictions of defendant, and reports or records of prior convictions of persons whom the attorney for the State expects to call as witnesses. Defendant further requests all reports of records of prior convictions of those persons defendant expects to call as witnesses, which must be produced within 15 days after receipt of defendant's list of witnesses.
The second sentence is redundant; furthermore, the rule contains no 15 day provision. The requests for records of conviction, however, must be honored. Convictions affect credibility and concern relevant information not only about witnesses to be called by the State, but also about witnesses the defendant may call.
18. All material now known to the State, or which may become known or which through diligence may be learned from the investigating officers or the witnesses in the case, which is exculpatory material. This request includes the reports of any investigations of suspects other than the defendant carried out by the Police Department, the Attorney General's office or any other police or law enforcement agency.
Our rules do not require "diligence" but the request is otherwise proper under Brady.
19. Copies of all reports made by the Police Department.
Improper; "all reports" cannot be relevant.
22. Names and addresses of any witnesses who may have information regarding the guilt or innocence of defendant arising out of the incident under which defendant stands charged.
Must be limited to the names and addresses known or within reasonable reach of the prosecution.
25. Any other evidence obtained by observation of police witnesses intended to be used against defendant at trial but is not part of a written police report furnished to defense counsel.
*502 The rule does not require the prosecutor to identify "evidence... intended to be used against defendants at trial." R. 3:13-3(a)(7) requires only:
(7) names and addresses of any persons whom the prosecuting attorney knows to have relevant evidence or information including a designation by the prosecuting attorney as to which of those persons he may call as witnesses.
27 n. The names of persons who can testify that they observed defendant continuously for 20 minutes (or other appropriate statutory or regulatory time period) prior to the taking of his breath test, during which time he did not ingest alcoholic beverages or other fluids, eat, smoke or vomit.
The rule does not require the identification of such evidence. The references to time periods are not clear. Compliance with R. 3:13-3(a)(7) is sufficient.
27 t. Assuming that complete test rights were read, the officer or the person who read them, when they were read, and under what circumstances, including location.
The phrase "and under what circumstances" is too vague to require a response. The "test" should be defined.
31. The names of any police officers, officials, or lay person in the company of defendant within one hour after his arrest who would have been in a position to observe his gait, hear his speech, see his mode of dress, or generally within one hour of his arrest, this request includes a jail log so that defense might question and subsequently present those witnesses if they are not called by the prosecution.
This is repetitious. It is sufficient that the prosecutor comply with R. 3:13-3(a)(7).
32 d. The circumstances under which the test was given. This is too vague to require a response.
34 i. State whether the officer in charge of the roadblock or sobriety checkpoint maintained records of each operation. If so, state the contents of each record, including, without limitation, what number of vehicles passing through the checkpoint was computed, how the number was computed, the total number *503 of vehicles checked, the total number of vehicles detained and any other data with respect to the operation of the roadblock or sobriety checkpoint.
The State is not required to provide the "contents" of records. It must provide certain "records" and "reports" or access to them. The request for "any other data with respect to the operation of the roadblock or sobriety checkpoint" is too broad and too vague to require a response.
34 k. This is an apparent typographical error. It repeats the preceding paragraph.
General comment. All discovery requests are fact sensitive. They must be addressed on a case by case basis.

CONCLUSION
The failure of the Prosecutor to respond to all discovery demands does not warrant a dismissal of the complaint. Thus far, the defendant has not been unduly prejudiced by the lack of discovery. The proper action is to remand the matter to the Municipal Court for trial. The Prosecutor, however, must provide the required discovery within 30 days from the date of this opinion absent which the Municipal Court, in its discretion, may impose appropriate sanctions upon the State. The sanctions may include dismissal of the complaint or suppression of evidence not disclosed.

APPENDIX
 MATHEWS, SITZLER, WEISHOFF & SITZLER
 ATTORNEYS AND COUNSELLORS AT LAW
 105 HIGH STREET
 MOUNT HOLLY, NEW JERSEY 08060
 (609) 267-1176
 JOHN B. MATHEWS
 JOHN O. SITZLER, JR.
 JOHN S. SITZLER
 ROBERT P. WEISHOFF
*504
 January 5, 1988
 Jan M. Schlesinger, Prosecutor
 129 High Street
 Mt. Holly, N.J. 08060
 Re: St. of N.J. v. Robert W. Tull
 Summons Nos. 8340
Dear Prosecutor:
This discovery letter is made on behalf of defendant Robert W. Tull, in accordance with the provisions of R. 3:13-3 of the New Jersey Rules Governing Criminal Practice, R. 4:21-1 et seq. of the New Jersey Rules Governing Civil Practice and federal and state constitutional requirements. I request discovery of any of the following enumerated items which are or would, in exercise of due diligence, be in the possession, custody or control of the prosecution and request that the state furnish each to me or permit inspection or copying. Unless otherwise specified or patently inapplicable, all requests include all materials relevant to the charges against the defendant.
1. Owner/operator's manual for the breath test instrument used.
2. Entire repair record for the breath test instrument used.
3. Assay report for the ampoule batch number used in my client's breath test including the report of quantitative analysis of sulphuric acide and potassium dichromate.
4. C.V. of any expert intended to be called by the State.
5. Copies of original police telephone and dispatch log relative to this case.
6. Copy of and specific time of any complaint to police initiating the police response to the defendant's location and preservation for defense use at trial or original phone tapes.
7. Copy of evidence log with respect to video tape chain of evidence.
*505 8. Copy of all calibration and/or repair records of components of video system.
9. Certificates of authority of breath test coordinators used.
10. Copies of all records of your municipality's receipt of, and/or application for drinking/driving enforcement funds.
11. Certification of accuracy of simulator solutions used.
12. All relevant written or recorded statements, or signed or unsigned confession or written summaries of oral summaries of confessions, made by the defendant.
13. All books, papers, documents, photographs, sound or video recordings, tangible objects, building or places which are intended for use by the State as evidence at the trial or were obtained from or belong to Defendant.
14. A written list of the names and addresses of all persons (including police officers) whom the attorney for the State expects to call as witnesses at the trial in support of the State's direct case.
15. All relevant written or recorded verbatim statements, both signed and unsigned, of any witnesses known to the State. If the State has no such written or recorded statements, then Defendant requests a summary of the testimony each witness is expected to give at the trial.
16. All reports of records of prior convictions of Defendant, and reports or records of prior convictions of persons whom the attorney for the State expects to call as witnesses. Defendant further requests all reports of records of prior convictions of those persons Defendant expects to call as witnesses, which must be produced within 15 days after receipt of Defendant's list of witnesses.
17. All warrants which have been executed in connection with the case and the papers accompanying them, including affidavits, transcripts of oral testimony, returns and inventories.
18. All material now known to the State, or which may become known or which through diligence may be learned from the *506 investigating officers or the witnesses in the case, which is exulpatory material. This request includes the reports of any investigations of suspects other than the Defendant carried out by the Police Department, the Attorney General's Office or any other police or law enforcement agency.
19. Copies of all reports made by the Police Department.
20. All documents, records, or others evidence which relate to the charges brought against Defendant.
21. Copies of any writings executed or audio or video tapes recorded by any police official or other interested party dealing with the incident under which Defendant stands charged, including but not limited to:
a. Police reports;
b. alcohol influence reports;
c. accident reports;
d. witness statements;
e. notes made by police officials to be used at trial;
f. sworn reports to the Administration Adjudication
Division regarding defendant's refusal to take a chemical test.
22. Names and addresses of any witnesses who may have information regarding the guilt or innocence of Defendant arising out of the incident under which Defendant stands charged.
23. Names of any police officers or any other persons who informed Defendant of his Miranda rights, including the times and places where the rights were given.
24. The results of all chemical and field tests administered to Defendant, whether or not the results have been recorded, together with the name of the person who administered the tests and the time, location and circumstances under which the tests were given.
25. Any other evidence obtained by observation of police witnesses intended to be used against Defendant at trial that is not part of a written police report furnished to defense counsel.
*507 26. Any available evidence known to the prosecutor that would tend to negate the guilt of Defendant, mitigate the degree of the offense, or reduce the punishment, regardless of whether it will damage the State's case, including but not limited to any evidence that may show that Defendant's actions fall outside the statutory definition of driving "under the influence".
27. Defendant asks for the following information to check any breath test result:
a. the dates of all simulator tests (if applicable) run by him within 12 months prior to the giving of defendant's test will verify the validity of his certification;
b. the number of the breath analyzer instrument;
c. the date of its original certification;
d. any repair records of the instrument;
e. whether the instrument has been tested for radio frequency interference (RFI) and if so, the dates of the testing, the circumstances under which the testing was done, the person who tested the instrument, the RFI sources the instrument was subjected to and the distance each source was to the instrument.
f. the location of the breath analyzer;
g. the ampoule lot number;
h. proof of certification of the ampoule lot;
i. the type of breath analyzer used (whether Smith & Wesson Breathalyzer Models 900, 900A, 1000, 2000; Omicron Intoxilyzer; CMI Intoxilyzer 4011, 4011A, 4011-AS, 4011-ASA, or Federal Signal Corp. Intoxilyzer 5000; Photoelectric Intoximeter; Auto Intoximeter; Intoximeter 3000, BAC Verifier; Mark II or Mark IV Gas Chromatograph, or any other breath testing equipment approved by the Department of Health); whether the breath testing equipment is designed to make a permanent record of the reading;
*508 j. whether ampoules were used in testing defendant and the present location of those ampoules;
k. assuming that the breath analyzer is a mobile unit, the date its use in mobile mode was approved by the Department of Health;
l. the time of day police officials took the defendant into custody;
m. the names of persons who can testify that they observed Defendant continuously for twenty minutes (or other appropriate statutory or regulatory time period) prior to the taking of his breath test, during which time he did not ingest alcoholic beverages or other fluids, eat, smoke or vomit;
n. the number of times Defendant blew into the breath analyzer and, if the number of times is less than two, whether police official informed the Defendant that a second test was not required;
o. the timing device used to determine the time of the test, whether it has been certified, and if so, proof of the certification;
p. assuming that similar tests were performed before and after the test was given to Defendant on the breath analyzer, the test dates and the names of persons who performed these tests before and just after the test was given to the Defendant;
q. the time of the first test and the result;
r. the time of the second test and the result;
s. whether the complete chemical test rights were read to Defendant or whether she agreed to take requested chemical test without a full reading of those rights;
t. assuming that complete test rights were read, the officer or the person who read them, when they were read, and under what circumstances, including location;
u. whether the person read the rights received any indication from Defendant that he did not understand his rights;
*509 v. whether Defendant was given a copy of the rights to read either before, during or after they were read to him, and
w. whether any police officer or other person further explained Defendant's legal rights to him after the rights were read, and if so, what advice or explanation was given.
28. Whether the arresting officers gave defendant an opportunity a telephone call after his arrest, and if so, when the call was allowed and to whom and for what purposes.
29. If blood or urine testing was done, identify:
a. the testing method used;
b. the qualifications of the person who performed the test;
c. the date, time and place of the tests;
d. whether the test was performed using enzymatic analysis, colorimetric distillation, alcohol separation or any other procedure;
e. whether defendant signed any waiver form or other document allowing the results of the test to be released to the State;
f. whether a sample of the blood or urine has been retained for testing;
g. whether any preservatives, anticoagulants, or other reagents were added to the blood or urine, and, if so, the name of the preservative, anticoagulant, or reagent, the amount added, by whom it was added, and the time it was added; and
h. a complete list of all persons in the chain of custody and possession of the blood or urine sample.
30. Whether defendant at any time indicated a desire to take any other chemical test to prove the alcohol content of his blood, and if so:
a. to whom the statement was made;
b. what additional tests were indicated;
c. who defendant indicated he wished to administer the test;
*510 d. whether defendant was afforded that opportunity; and
e. what the result was.
31. The names of any police officers, officials, or lay person in the company of defendant within one hour after his arrest who would have been in a position to observe his gait, hear his speech, see his mode of dress, or generally within one hour of his arrest, this request includes a jail log so that defense might question and subsequently present those witnesses if they are not called by the prosecution.
32. If photographs, sound recordings or video recordings were taken of defendant:
a. the name of the person who took the photographs or acted as technician for sound or video recordings;
b. the time the photographs, sound or video recordings were taken;
c. the location at which they were taken;
d. the circumstances under which they were taken;
e. the present location of any photographs, sound or video recordings;
f. the technical experience of the person who took the photographs or who acted as technician for the sound or video recordings;
g. whether defendant was read his Miranda rights or any other rights prior to the taking of the photographs, sound or video recordings, and
h. whether defendant was given an opportunity to refuse to have his picture taken, or be subjected to sound or video recordings, and if so, what was said to the Defendant concerning his right to refuse.
33. If the defendant was given a horizontal nystagmus test,
a. the name of the person who administered the test;
b. the names of any witness or witnesses to the test;
c. the location at which the test was given;
*511 d. the circumstances under which the test was given;
e. whether any videotape was made of the test;
f. the qualifications, training and/or certification of the person administering the gaze nystagmus (optometrist, physician, officer receiving field training);
g. whether the person administering the gaze nystagmus test correlated the test to a particular blood alcohol concentration and, if so, the particular concentration;
h. all factors used by the person administering the gaze nystagmuse test to rule out causes of nystagmus other than blood alcohol concentration.
34. If the defendant was stopped at a roadblock or sobriety checkpoint, answer the following:
a. Was the roadblock or sobriety checkpoint, at the time of its operation, run under guidelines promulgated by any governing board or body, including, without limitation, the secretary of public safety? If so, identify such document and the custodian of same.
b. If the roadblock or sobriety checkpoint was set up within the promulgated guidelines, identify the author of the guidelines, whether the guidelines were verbal or in writing, and if in writing, the custodian of same.
c. If the answer to subpart b above is in the affirmative, state the purpose, method, operational philosphy and operational planning for the use of the roadblocks;
d. If there are any verbal or written plans for the roadblocks in existence, identify whether they include the date, location, time, duration and set patterns of cars to be stopped; and if so, the contents of same;
e. Explain how the subject site of the roadblock or sobriety checkpoint was selected and identify any documents which relate or otherwise pertain to same;
*512 f. Identify all safety considerations used in connection with the roadblock, including, but not limited to, any identification of the use of signs, road flares, police vehicles with flashing lights, uniformed officers, safety barrels and other barriers;
g. State whether there was any advance notice given to the public for the subject roadblock or sobriety checkpoint; and if so, state the dates of such notice, the form of such notice, whether the notice was verbal or in written form, and if written, the contents of such notice and custodian of same;
h. State all measures employed by the state to minimize inconvenience at the roadblock or sobriety checkpoint. Specifically, identify all arrest procedures, if any, including any oral request made by the officer to each vehicle operator approached; and if such request in any way differed with respect to the defendant, identify each and every way that the request differed;
i. State whether the officer in charge of the roadblock or sobriety checkpoint maintained records or each operation. If so, state the contents of each record, including, without limitation, what number of vehicles passing through the checkpoint was computed, how the number was computed, the total number of vehicles checked, the total number of vehicles detained and any other data with respect to the operation of the roadblock or sobriety checkpoint;
j. State whether a study or survey was conducted to determine whether there would be a less intrusive means available for the state for deterring drunk driving other than roadblock or sobriety checkpoint procedures used; and if so, indicate the name, date and results of each study and/or survey, and if in writing, the custodian of same;
k. State whether a study or survey was conducted to determine whether there was a less intrusive means available to the state for detecting drunk drivers other than the roadblock or sobriety checkpoint procedures used; and if so, indicate the *513 name, date and results of each such study and/or survey, and if in writing, the custodian of same.
In addition, each request is specifically sought under the rule of Brady v. Maryland, 373 U.S. 83 (1963) and its progeny, as well as the applicable discovery rules. Brady material must be made available to the defendant as soon as it becomes evident to the prosecution that the material information in its possession falls within the ambit of the rule. R. 3:13-3; State v. Caster, 91 N.J. 86 (1982). If the prosecution finds itself with Brady material, but feels that production can be delayed to trial or a point closer to trial, I shall expect you to advise me immediately so that the time for disclosure can be resolved by a court of appropriate jurisdiction.
I request that you respond in writing to this letter within ten (10) days of service, and that your response take the following form. As to each paragraph in this letter, state what types of disclosure are declined and the reasons therefore, and state whether the prosecution has materials responsive to each request which it declines.
Similarly, I shall expect what tangible evidence can be produced in appropriate form and delivered to my office or a date, time and location which is convenient for me to examine same.
I remain available to confer promptly with you in order to amicably resolve any discovery aspects of this case without unnecessary recourse to the court.
Under R. 3:13, as made applicable to the court under R. 7:2g, defense will produce reciprocal discovery upon receipt of full and complete discovery from the State as enumerated above.
 Very truly yours,
 MATHEWS, SITZLER, WEISHOFF & SITZLER
 /s/ John O. Sitzler, Jr.
 JOHN O. SITZLER, JR.
*514 JOS, jr/lm
 JOS, jr/lm
 cc: Court Clerk, Maple Shade Township
 Police Department, Maple Shade Township
NOTES
[1] The Laganella, court, in dicta, spoke of "evidence ... reasonably calculated to lead to evidence," 144 N.J. Super. at 282, possibly authorizing a fishing expedition. However, I conclude that use of the word "evidence" implies the limitation on discovery used here.