242 N.J. Super. 467 (1990)
577 A.2d 520
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
MICHAEL RAY YOUNG, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1990.
Decided July 10, 1990.
*468 Before Judges KING, SHEBELL and BAIME.
Larry E. Holtz, Assistant Prosecutor, argued the cause for the appellant (Stephen G. Raymond, Burlington County Prosecutor, attorney; Larry E. Holtz, of counsel and on the letter brief).
Richard McCarthy argued the cause for the respondent.
Stephen H. Monson, Deputy Attorney General, argued the cause on behalf of amicus curiae State of New Jersey (Robert J. Del Tufo, Attorney General, attorney; Stephen H. Monson, *469 of counsel and on the brief; Deborah L. Gnatt, Deputy Attorney General, on the brief).
The opinion of the court was delivered by SHEBELL, J.A.D.
The State of New Jersey was granted leave by this court to appeal an order of the Law Division. The Law Division affirmed a portion of an order of the Bordentown Township Municipal Court which directed the State to produce three breathalyzer ampules each bearing the same lot number as those used in testing the breath of defendant Michael Ray Young. We also granted leave to review that aspect of the order which required the New Jersey Division of State Police, within 60 days, to
adopt appropriate regulations for implementing the production of breathalyzer ampules bearing the same lot or batch number as those used to test the breath of a particular defendant, to defendants in discovery, consistently with the discovery Order of the Court below appealed from and affirmed by this Court, which regulations shall include provisions regarding the number of ampules to be produced in response to a defense discovery request, the method of their selection, the cost to be imposed on the requesting defendant and any other matters the New Jersey Division of State Police may deem appropriate such as safety considerations in the handling of breathalyzer ampules and special situations if a batch of ampules bearing a particular lot or batch number requested were to have been exhausted or accidentally destroyed by the State[.]
In its brief on appeal, "[t]he defense consents to this Court's vacating that portion of the Subject Order that follows affirmance of the Discovery Order, if this Court is so disposed." We will discuss this issue later in our opinion.
The State's response to defendant's discovery request advised that two breathalyzer tests of defendant's breath were conducted on August 4, 1989, using ampules bearing Control No. 90301. However, the State notes that it routinely discards the ampules actually used in conducting breathalyzer tests immediately after the test is administered. Two ampules are used in the breathalyzer machine when a test is given. One is the control ampule, and the second is the ampule into which the breath sample is introduced to produce an interaction of any *470 alcohol in the breath sample with the chemicals in the ampule. The solution is then tested by the analyzing mechanisms of the breathalyzer, and a reading is produced.
Discovery further indicated that each of the two breathalyzers tests, taken thirteen minutes apart, produced the same reading of.13% blood alcohol content. According to the report completed by the investigating police officer concerning his observations of the defendant, the defendant's balance, speech and appearance were consistent with intoxication, and there was a very strong odor of alcoholic beverage on defendant's breath. The officer's report indicates that defendant asserted he consumed four beers at a friend's house in a period of approximately one hour and forty-five minutes and had nothing to eat that day prior to his alcohol consumption.
Defense counsel's only representation for obtaining the discovery order requiring turnover of three ampules of the same batch used in the test given to defendant was that he intended to have independent testing done of the contents of the ampules. He readily admitted during argument on appeal in this court that it was his own idea to ask for three ampules and that he had no scientific basis or request from his expert for production of that number of ampules. Defense counsel further admitted that nothing he has obtained thus far, including the breathalyzer readings and the reports concerning the observations of the defendant, provides any basis for suspicion that the ampules used in the breathalyzer tests were less than satisfactory. It is against this background that we review the exercise of discretion by the trial court in granting defendant's discovery request.
This court noted in State v. Ford, 240 N.J. Super. 44, 48, 572 A.2d 640 (App.Div. 1990), that "[i]t is well-established that discovery of relevant materials is allowed under R. 3:13-3 in drunk driving cases." We emphasized in Ford that
a defendant in a drunk driving case is entitled to discovery of all the relevant materials listed in the 11 categories enumerated in R. 3:13-3(a). [Citation omitted]. However, "[u]nlike discovery in civil cases, information cannot be *471 demanded which merely leads to other information which is `relevant.'" [240 N.J. Super. at 48, 572 A.2d 640, quoting State v. Tull, 234 N.J. Super. 486, 499-500, 560 A.2d 1331 (Law Div. 1989)].
Further, we cautioned in Ford that in drunken driving cases discovery must, for practical purposes, be circumscribed by the requirement that the defendant have a reasonable basis for believing that the items requested will assist in the defense of the charge. Id. at 49, 572 A.2d 640. Although we agreed that a defendant need not know flawed procedures were used in giving a breathalyzer test in order to require the State to disclose information, we determined, nonetheless, as a matter of policy, that discovery in drunken driving cases should be subject to practical limitations. Ibid. Thus, we established the rule that "defendants' discovery in DWI cases is limited to those relevant items, within the limitations of R. 3:13-3(a), which there is a reasonable basis to believe will assist a defendant's defense." Ibid.
In Ford, we made reference to Romano v. Kimmelman, 96 N.J. 66, 82, 474 A.2d 1 (1984), as providing guidance for determining what may be relevant in drunken-driving cases and specifically noted that information concerning the conditions under which the tests were held, the machine operator's competence, the particular machine's state of repair and identification and documentation of the ampules used for defendant's test were all relevant inquiries. See Ford, 240 N.J. Super. at 50-51, 572 A.2d 640. Further, we made reference to the trial court's discretion in entertaining applications for discovery of additional items "which there is a reasonable basis to believe will assist a defendant's defense." Id. at 49, 572 A.2d 640.
We hold that physical production of ampules from the same batch used in defendant's breathalyzer tests is not to be ordered as part of routine discovery. Moreover, based upon the record presented to us in this appeal, including the representations of defense counsel, as a matter of law there is no reasonable basis to believe that production of the contents of the ampules will assist in defendant's defense.
*472 We are aware that it has been standard procedure for law enforcement officials in New Jersey to dispose of the contents of test ampules after the breathalyzer tests have been given. See State v. Teare, 133 N.J. Super. 338, 336 A.2d 496 (App.Div. 1975). Indeed, there is no constitutional requirement that breath samples be preserved. See California v. Trombetta, 467 U.S. 479, 491, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 423 (1984). We do not perceive it to be the function of this court to make further inquiry into the feasibility of preserving test ampules, or to instruct the executive branch to reconsider its policy of discarding test ampules in light of the Legislature's failure to mandate such procedures. The Legislature has provided safeguards under N.J.S.A. 39:4-50.2(c) which require that an accused be permitted to have samples of blood, breath, or urine made by a person or physician of one's own selection.
We do not mean to imply that the trial court is without discretion to order the turnover of a relevant ampule in an appropriate case where there is a showing of a reasonable basis to suspect that the operation of the breathalyzer is suspect. See Ford, 240 N.J. Super. at 49, 572 A.2d 640. There is, however, in this case no preliminary showing of a reasonable basis to suspect that the breathalyzer results are inappropriate or that ampules used were not properly constituted.
Regarding the Law Division's order that the Division of State Police adopt regulations for implementing the preserving and production of ampules, we are in accord with the position of the State that we have no cause to interfere with the clearly defined functions which the Legislature has outlined for the executive branch with regard to breathalyzer testing. See N.J.S.A. 39:4-50.3. This statute directs the Attorney General to approve satisfactory techniques and methods under which the arrested person's breath may be tested. Ibid.
We find no constitutional imperative for the preserving of test or control ampules or for reserving any particular number of ampules from a batch for later independent testing by a *473 defendant. See Trombetta, 467 U.S. at 488-91, 104 S.Ct. at 2533-35, 81 L.Ed.2d at 421-23. The availability of an independent test by a defendant is a sufficient safeguard to satisfy due process considerations.
As we noted in State v. Maure, 240 N.J. Super. 269, 277, 573 A.2d 186 (App.Div. 1990), the periodic testing of the breathalyzer instrument by the use of a solution with a known alcohol content serves as a sufficient test of the ampules used in the testing procedure. Large numbers of ampules from the same batch are regularly tested by State Police coordinators in this way and their tests are certified. We are convinced in these circumstances that the rights of a defendant in a DWI case are sufficiently protected by the discovery rule we have established, see Ford, 240 N.J. Super. at 40, 572 A.2d 640, and the risk that a particular ampule may be improperly constituted and escape detection is "insufficient to warrant a rule which would require the State in every case to prove that every ampoule was perfect." Maure, 240 N.J. Super. at 288, 573 A.2d 186 (Shebell, J.A.D., concurring opinion).
We understand that there may be cases where the test results are sufficiently suspect to cause discovery of an ampule from the batch used to be appropriate but that it may turn out that the supply of ampules from the same batch will be exhausted. We are satisfied, however, that if such circumstance occurs, a defendant can nonetheless be sufficiently protected by the presumption of innocence and the requirement that the State prove the charge of DWI beyond a reasonable doubt. See State v. Witter, 33 N.J. Super. 1, 6-7, 108 A.2d 862 (App.Div. 1954). If the Legislature is convinced that additional protection is necessary, it may amend the statute and cause the Division of State Police to establish procedures for preserving control ampules, test ampules or some percentage of the batch used for testing.
The orders of the Law Division under review are hereby reversed and vacated.